[Civil No. 584.  Filed April 16, 1898.]

[53 Pac. 187.]

APACHE COUNTY, Defendant and Appellant, v. JULIA BARTH, Executrix of the Will of Jacob Barth, Deceased, Plaintiff and Appellee.

1. COUNTIES—WARRANTS—PROPERLY EXECUTED PRIMA FACIE CAUSE OF ACTION—IMPEACHMENT—MERE DENIAL OF EXECUTION INSUFFICIENT TO OVERCOME PRESUMPTION OF LEGALITY.—County warrants, signed by the proper officers, are *prima facie* binding and legal. Such warrants make a *prima facie* cause of action. Impeachment must come from the defendant. A mere denial of their execution unsupported by any evidence is insufficient to overcome the presumption in favor of the legality of their issue.

2. SAME—SAME—PLEADING—ANSWER—DENIAL OF EXECUTION—VERIFICATION—EFFECT OF—REV. STATS. ARIZ. 1887, PAR. 735, CITED.—A denial of the execution of county warrants, verified (after plaintiff had made his case and rested) under paragraph 735, *supra,* does not necessitate the plaintiff's establishing by corroborative affirmative evidence the execution and issue of the warrants and the regularity and legality of the actions of the board of supervisors in so doing, but the effect and extent of the verification is to enable the defendant to disprove by affirmative evidence the execution of the warrants, or the regularity or legality of the proceedings on which their issue was based, and that the *prima facie* case already made before the verification of the answer, by the presentation of the warrants duly executed and in proper form, stands until thus destroyed.

3. SAME—SAME—EVIDENCE—COUNTY RECORD OF ALLOWANCE OF CLAIMS AND WARRANTS ISSUED—ABSENCE OF—INSUFFICIENT TO OVERCOME PRESUMPTION OF VALIDITY OF WARRANTS.—While the presentation of the records of the board of supervisors covering the dates on which the warrants were alleged to have been issued would have affected their validity if such records failed to show the authorization of the issue of the warrants or the allowance of the claims on which the warrants were based; nevertheless, evidence that the records of the county showed that the records of the allowance of claims and issue of warrants in this year 1884, the year of the issue of the warrants sued on, were entirely absent, and that the only record was that commencing in 1885, is insufficient to overcome the *prima facie* case made by the warrants declared upon.

4. SAME—SAME—STATUTE OF LIMITATIONS—WHEN CAUSE OF ACTION ACCRUES—FUNDS AVAILABLE FOR PAYMENT—COMP. LAWS ARIZ. 1877, CHAP. 6, SECS. 9-11, 13, AND CHAP. 2, SEC. 19, AND REV. STATS. ARIZ. 1887, PAR. 2314, CITED AND CONSTRUED.—The Compiled Laws of

1877, under authority of which these warrants were issued, provides (chap. 6, secs. 9-11, 13, *supra*) that the county treasurer shall, if there be money in the treasury, redeem warrants on presentation; if there be no funds, he shall indorse thereon "Not paid for want of funds," and when there are sufficient funds to redeem such warrants he shall give notice that he is ready to redeem, and warrants shall be entitled to preference in payment in the order of presentation. Chapter 2, section 19, of the Compiled Laws of 1877, *supra*, provides that where a judgment be recovered against county officers as such no execution shall issue, but the judgment shall be levied and collected as other county charges and paid by the county treasurer.

*Held*, that the bar of the statute of limitations (Rev. Stats. Ariz. 1887, par. 2314) against an action on a county warrant does not commence to run until there are sufficient funds in the county treasury to pay such warrants.

5. SAME—SAME—SAME — PLEADING — WARRANTS PAYABLE OUT OF PARTICULAR FUND—WHEN AVAILABLE.—Where county warrants are payable out of a particular fund to be created by the county, it cannot plead the statute of limitations until it shows that that fund has been provided.

6. SAME—SAME—SAME—STATUTE GOVERNING—REV. STATS. ARIZ. 1887, PAR. 415, INAPPLICABLE—PAR. 2314 GOVERNS—PAR. 2066 CITED.— The six months' limitation provided by paragraph 415, *supra*, for open account before adjustment is inapplicable to a suit on county warrants brought under the provisions of paragraph 2066, *supra*, for the purpose of having the board of supervisors approve the payment or exchange of such warrants from the county redemption fund thus provided. The five years' limitation (par. 2314, *supra*) governs such suit, it being an action on "an instrument in writing."

7. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—GENERAL ASSIGNMENTS CALL FOR NO DIRECT RULING.—An assignment of error that "the court erred in rendering judgment for plaintiff and against defendant, for the reason that the said judgment was contrary to the evidence in the case, and that it was contrary to the evidence as shown in the record, and against the law of the case," calls for no direct ruling, as it is not definite or specific, and simply raises in general terms the points already presented in the former assignments.

REVERSED. 177 U. S. 538; L. Ed. 44:878; 20 Sup. Ct. 718.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Gila. Owen T. Rouse, Judge. Affirmed.

The facts are stated in the opinion.

J. F. Wilson, for Appellant.

The court erred in not sustaining defendant's general plea of limitation. Our statute (Rev. Stats., par. 2314) declares that "action for debt, where the indebtedness is evidenced by, or founded upon, any contract in writing, executed within this territory, shall be commenced and prosecuted within five years, and not afterwards."

That is this kind of a case, and therefore comes before the sweep of the statute, unless the fact that the defendant, one of the alleged parties to the action, being a county, and therefore an integral part of the state, is excluded from the operation of it.

As the law is, counties, where they deal with individuals, with matter of a private nature as distinguished from public, in which the maxim *Nullum tempus occurrit regi* is to be found, are bound by the statute of limitations the same as individuals, and therefore the same may be pleaded against them, and they also may plead them as defenses against matter barred by them. *Cunningham* v. *Sims,* 82 Mo. 587; *Houston R. R. Co.* v. *Travis,* 62 Tex. 16; *Baker* v. *Johnston,* 33 Iowa, 151; *Caldwell County* v. *Herbert,* 68 Tex. 321; *County of St. Charles* v. *Powell,* 22 Mo. 525, 66 Am. Dec. 637; *City of Alton* v. *Illinois Transfer Co.,* 12 Ill. 38; *Logan County* v. *Lincoln,* 81 Ill. 156; *Ft. Smith* v. *McKibbin,* 41 Ark. 45, 48 Am. Rep. 19; *Wheeling* v. *Campbell,* 12 W. Va. 36; *Carpenter* v. *Union Township,* 58 Iowa, 335, 12 N. W. 280.

The alleged warrants sued on, as appears from their face, were seven years old and over when this action was brought, and therefore, on their face, as a matter of fact, they were barred. This would be so even if they were genuine.

From the face of the warrants, and the declarations made fixing the causes of action founded on them, they were barred as a matter of law, and the court erred in not so holding.

The warrants showed on their face that they were all issued in 1884, indorsed "Not paid for want of funds" in 1884, and not sued on until 1891; and the declaration emphatically charges that the said defendant at all times neglected and refused, and does now neglect and refuse, to provide for the payment, etc.

On the proposition of law that the statement of a plea must always be taken most strongly against the pleader, we

insist that, from the statement therein made,—"that defendant, at all times, neglected and refused, and does now neglect and refuse," to pay, etc.,—the allegation of resistance on the part of the defendant is shown to have been made more than five years before the action was commenced, and therefore it was barred by the statute.

*King Iron Bridge Co.* v. *Otoe County,* 124 U. S. 459, 8 Sup. Ct. 582, is a decision following the ruling of the supreme court of Nebraska, interpreting its own statute, and in which it had held that the statute did not run against county warrants until the money was in the treasury to pay them, or that sufficient time had elapsed to permit the county to collect it.

That case showed the refusal to begin at the bringing of the action. This one shows that the refusal was at all times; and therefore more than five years before the bringing of the action. That being so,—and the complaint asserts that it is,—there was no legal reason to await the action of the county board to see if they intended to make arrangements for their payment. This did away with any such probability. It put the moving party, the holder, on knowledge that a defense was waiting for any action that might be brought, that the pretended obligation was resisted, and therefore the setting of the statute in motion began much more than five years before the action was brought. This shows that the Nebraska case is wholly inapplicable to the facts in this case.

Our statute makes the following provision: "Par. 735. Any answer setting up any of the following matters, unless the truth of the pleadings appear of record, shall be verified by affidavit. . . . 8. A denial of the execution by himself, or by his authority, of any instrument of writing upon which any pleading is founded, in whole or in part, and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed."

That is this case. The pleading of plaintiff is founded on the warrant, which is an instrument in writing. It is founded on it altogether—"in whole." It is not alleged to be lost or destroyed. Its truth does not appear of record. The answer denies the execution of the instrument by the county of Apache, denies that it was ever issued by her authority, alleges that it is not genuine, alleges that it was and is a forgery, which, of course, reasserts that it was not executed

by her or by her authority. This answer was sworn to—
"verified by affidavit"—as provided by statute. Thus the
issues were joined in each and every count in the suit.

The plaintiff submitted no evidence other than the pretend-
ed warrants themselves, which were put directly in issue by
the verified answer of the defendant.

The validity of these instruments being put in issue by
the verity of the answer, as provided by the statute, the burden
was thrown on plaintiff to show their validity, that they were
legally issued, that the necessary steps were taken, beginning
with the accounts from which they were alleged to have
sprung, before she was entitled to judgment.

The verification of the answer threw the burden of proof
on the plaintiff. She was bound to sustain the burden and
prove her case. That this kind of answer does put the instru-
ment in issue, see *Horn* v. *Water Co.*, 13 Cal. 62, 73 Am. Dec.
569; *Corcoran* v. *Doll*, 32 Cal. 83; Green on Pleading, sec. 400.

T. W. Johnston and E. M. Sanford, for Appellee.

As to the statute of limitations: These warrants are not
within the statute of limitations,—1. Because of the char-
acter of the obligations; 2. Because the county treasurer be-
came, on the nineteenth day of April, 1888,—under the
testimony, that being the first date after the issuance of
the warrants when money was in the county treasury not
otherwise appropriated, applicable to, or set apart for the
payment of said warrants,—a trustee for the holder of said
warrants.

And further, if there is any statute of limitations of which
appellant may avail itself as against these warrants, it cer-
tainly did not begin to run until after there was money in
its treasury otherwise unappropriated, applicable to the pay-
ment of these warrants,—to wit, April 19, 1888,—and the
statute of five years invoked by appellant will not avail it,
because suit was brought within less than five years after
1888,—to wit, in 1891.

That no statute of limitation runs against these warrants
has been clearly decided by at least two cases in the supreme
court of the United States.

In Nebraska, under statutes the same in spirit and almost
identical in language as those under which these warrants

were issued, in the case of *Brewer* v. *Otoe County,* 1 Neb. 384, in deciding that these warrants were not subject to the statute of limitations, on page 384 the court said: "Whoever deals with a county and takes in payment of his demand a warrant of the character of these, no time of payment being fixed, does. so under an implied agreement that if there be no funds in the treasury out of which it can be satisfied, he will wait until the money can be raised in the ordinary mode of collecting such revenues. He is presumed to act with reference to the actual condition and the laws regulating and controlling the business of the county. He cannot be permitted, immediately upon the receipt of such warrant, to resort to the courts to enforce without regard to the condition of the treasury at the time, on the laws by which the revenues are raised and disbursed."

The same question arose in *King Iron Bridge Co.* v. *County of Otoe,* 27 Fed. 800, in which the federal court held directly the contrary, saying: "When a claim against a county has been audited, and warrants have been drawn on the treasury therefor, and such warrants have been accepted by the creditor, he must present them to the treasury for payment before he can properly sue the county thereon. When presented to the treasurer for payment, and payment is refused, the right to sue becomes complete and absolute, and the lawful holder of the warrants can then proceed to have his claim reduced to judgment."

However, this latter case was appealed to the supreme court of the United States, and upon the final decision of it upon the merits (124 U. S. 514, 8 Sup. Ct. 590), after approving the Nebraska decision, the court said: "According to the rule established in *Brewer* v. *Otoe County,* the cause of action did not accrue when the payment was refused, but only when the money for its payment was collected, or time sufficient for the collection of the money has elapsed."

Again, the holder of the warrant having dealt with the county, with the knowledge of the statutes above quoted under which these warrants were issued, which provide the methods and order of their payment, that statute becomes a part of his contract, which he could not enforce by a suit until the money was raised for the payment thereof, and the supreme court of the United States, in the case of *Chapman*

v. *Douglas County,* 107 U. S. 348, 2 Sup. Ct. 62, said: "But the more satisfactory answer to this defense is, that none of the statutes of limitation referred to apply to the case at all. We have already seen that by the decision in the case of *Brewer* v. *Otoe County,* 1 Neb. 375, it is the declared law of Nebraska that the claim against the county for the purchase money, on the supposition that the understanding had been to accept payment according to the terms of the statute, was not liable to the bar of the limitation acts."

Again, it will be seen from these warrants themselves that they are payable from special funds,—thirty-five of them from the general fund, and five from the road fund,—and the decisions are uniform to the effect that warrants, bonds, and such obligations payable from a particular fund or source cannot be defeated by statute of limitation until the county shows that there was money in the particular fund for the payment of those warrants, at least within the time of the statute of limitations attempted to be pleaded. *Freehill* v. *Chamberlain,* 65 Cal. 603, 4 Pac. 646; *Sawyer* v. *Colegan,* 102 Cal. 283, 36 Pac. 580; *Grayson* v. *Latham,* 84 Ala. 546, 4 South. 200, 866; *Caldwell* v. *Gwinn,* 54 Ala. 64; *United States* v. *Brown,* 41 Fed. 481.

The plaintiff's production of the warrants, in all respects regular on their face, signed by the proper officers, etc., made out her *prima facie* case, and that evidence sustained the findings of the court. *Clark* v. *City of Des Moines,* 19 Iowa, 227.

In *Grayson* v. *Latham,* 84 Ala. 546, 4 South. 200, 866, the court said: "Upon the question we have been discussing, the plaintiff made a *prima facie* case when he produced and proved his warrants, etc. . . . Making this *prima facie* case, . . . the burden would then be shifted to the defendant to overturn the presumption of liability."

"County and city orders signed by the proper officers are *prima facie* binding and legal. These officers will be presumed to have done their duty. Such orders make a *prima facie* cause of action. Impeachment must come from the defendant." Dillon on Municipal Corporations, 3d ed., par. 503; *Heffleman* v. *Pennington County,* 3 S. Dak. 162, 52 N. W. 851; *Ray* v. *Wilson,* 29 Fla. 342, 10 South. 614; *Merchants Nat. Bank* v. *McKinney,* 2 S. Dak. 106, 48 N. W. 846; *Lincoln* v. *Luning,* 133 U. S. 767, 10 Sup. Ct. Rep. 363; *Wall* v.

*Monroe County,* 103 U. S. 432; *Leavenworth County* v. *Keller,* 6 Kan. 311; *Cheyney* v. *Inhabitants etc.,* 60 Mo. 53; *Brewer* v. *Otoe County,* 1 Neb. 382.

Even had the answer been properly verified, the effect of it would have been to have permitted the defendant to have supported its various pleas, if it could, with competent testimony; it would not have shifted the *onus.* *Martin* v. *Lamb,* 38 S. E. 11.

DOAN, J.—This is an action by the executrix of Jacob Barth, deceased, based upon forty county warrants of Apache County, thirty-five of which are payable out of the general fund and five out of the road fund of said county. All were issued in the year 1884. All were presented in the year 1884, and after issue, to the appellant's treasurer for payment, and were by him indorsed "Not paid for want of funds." Again in the year 1888 the said warrants were presented to appellant's board of supervisors to be exchanged for bonds under the Funding Act of 1887, which exchange was refused, and the warrants in question were marked in red ink across the face thereof by the said board of supervisors "Forgery," and then returned to their owner. Suit was commenced in Apache County in the year 1891, and, after various changes of venue, was finally tried in Maricopa County, on the sixth day of May, 1896, on which trial the counsel for plaintiff voluntarily withdrew all claim on eleven of said warrants "because a careful, microscopical examination of the said eleven warrants would show there had been an alteration of the figures, and that they had been vitiated by being raised, and on them the plaintiff made no claim." The case was submitted to the court and taken under advisement, and thereafter, on the twentieth day of March, 1897, the court found that all of the warrants sued on, except the eleven that were withdrawn, were valid, subsisting, and legal claims against the said defendant, Apache County, and judgment was rendered on the remaining twenty-nine of said warrants in favor of the plaintiff and against the defendant for the sum of $14,352.13 and costs of the action, from which judgment defendant has appealed to this court.

The appellant has presented five assignments of error, as follows: "First. The court erred in not sustaining defendant's general plea of limitation. Second. The court erred in

not sustaining defendant's special plea of limitation to each of the forty counts set up in plaintiff's amended complaint, and in finding against those pleas. Third. The court erred in finding that the warrants sued on, and each of them, save those admitted to be forged, was and were legally issued. Fourth. The court erred in finding against defendant's plea that said warrants, and each of them, were forged, and of no binding effect on defendant. Fifth. The court erred in rendering judgment for plaintiff and against the defendant, for the reason that the said judgment was contrary to the evidence in the case, and that it was contrary to the evidence as shown by the record, and against the law of the case.''

We will consider these assignments in their natural rather than in their numerical order. The first point is that raised in the third assignment: ''That the court erred in finding that the warrants sued on, and each of them, was and were legally issued.'' It has been held by the courts generally that ''county and city warrants, signed by the proper officers, are *prima facie* binding and legal. These officers will be presumed to have done their duty. Such warrants make a *prima facie* cause of action. Impeachment must come from the defendant.'' Dillon on Municipal Corporations, sec. 502, and cases cited. These warrants, copies of which were attached to the complaint, and the warrants themselves introduced in evidence, were proper in form and appearance. The wording was in accordance with the requirements relative to such warrants. The names and signatures were of the proper officers, and appeared to be genuine. Evidence to show fraud or corruption or want of authority in their issue could have been presented, and, if presented, should have been received by the court; but, in default of evidence overturning the presumption in favor of the legality of their issue, the ruling of the district court was correct. The record does not show any defense offered by the defendant further than the denial of their execution, and the empty denial, unsupported by any evidence, was insufficient to overcome the presumption established.

The next assignment is the fourth: ''That the court erred in finding against defendant's plea that the said warrants, and each of them, were forged, and of no binding effect on defendant.'' This leads us to consider the nature of the

pleadings. The complaint was founded upon the warrants in question, copies of which were attached thereto, and the originals were filed in the case and introduced in evidence. Paragraph 735 of the Revised Statutes of Arizona provides: "Any answer setting up any of the following matters, unless the truth of the pleadings appear of record, shall be verified by affidavit: A denial of the execution by himself or by his authority of any instrument in writing upon which any pleading is founded in whole or in part and charged to have been executed by him or his authority." The answer of the defendant "denies that the board of supervisors of said county of Apache ever ordered the issuance of the said warrants sued on, or either of them; denies that the said warrants, or any or either of them, were ever issued or dircted to be issued by the board of supervisors of the said county of Apache, or by the authority of said board." This answer up to the time the case went to trial and the plaintiff had presented her evidence and rested her case was unverified; but after plaintiff had rested, and defendant desired to establish the forgery of the warrants, it was permitted by the court to verify its answer. The verification was then made by the then recorder and *ex officio* clerk of the board of supervisors in the following language: "M. Gonzalez, being duly sworn, says that he is clerk of the board of supervisors of the county of Apache, in the territory of Arizona, and the custodian of the records of said board; that he has heard read the above and foregoing answer of the county of Apache, defendant in the above and foregoing action; and that the facts therein stated as defenses to the various causes of action declared on are true, and the warrants sued on are not genuine. Subscribed and sworn to the 6th day of May, 1896." It has been objected to this verification that it has not the essential elements of the affidavit required in the statute, and therefore is not sufficient to permit the defendant to attack the execution of the warrants, on the ground that the affidavit does not contain an allegation of knowledge on the part of the affiant, nor of information or belief upon points not within affiant's knowledge; that an affidavit that the facts stated are true does not apply to a denial; and that the allegation that "the warrants sued on are not genuine" is the statement of a conclusion of law. These points would be material if the defendant had gone forward

under the verification to the answer and presented evidence to disprove the execution of the warrants or to establish their invalidity by virtue of fraud, irregularity, or other cause; but as the only office of the verification would be to enable the defendant to establish such defense, and as no proof was offered and rejected by the court, for which rejection error is assigned, and none was presented to overcome the presumption established by the *prima facie* case already made by the plaintiff, the sufficiency of the verification does not become material, and any ruling thereon herein would be simply *obiter dictum*, unless on the theory advanced by defendant that the verification of the answer by defendant necessitates plaintiff's establishing by corroborative affirmative evidence the execution and issue of the warrants and the regularity and legality of the actions of the board in so doing. This position is not tenable. The weight of authority is decidedly that the effect and extent of the verification is to enable defendant to disprove by affirmative evidence the execution of the warrants or the regularity or legality of the proceedings on which their issue was based, and that the *prima facie* case already made by the presentation of the warrants, duly executed and in proper form, stands until thus destroyed. The supreme court of the United States held in a similar case, in *Wall* v. *Monroe County,* 103 U. S. 74: "The warrants in suit are evidences of indebtedness by the county, issued by that branch of its government to which is intrusted, by the laws of the state, the examination and approval of claims against the county. They are orders upon the treasurer to pay out of its funds for county purposes, not otherwise appropriated, the amounts specified. They establish *prima facie* the validity of the claims allowed and authorize their payment." The defendant objected to the introduction of the warrants in evidence. The court took the evidence subject to the objections, reserving his ruling thereon; hence there is no exception on the part of the defendant to the ruling of the court admitting the warrants in evidence. But at the time plaintiff made her case and offered the warrants in evidence there was no verified answer before the court to prevent the allowance of the warrants in evidence; hence it is not necessary to decide whether a verified answer should have excluded such warrants from evidence until duly proven. The answer was verified after plaintiff's

evidence had been presented and *prima facie* claim established and plaintiff had rested her case. "The plaintiff made a *prima facie* case when she produced and proved her warrants. . . . The burden would then be shifted to defendant to overturn the presumption of liability." *Grayson* v. *Latham,* 84 Ala. 546, 4 South. 202, 866. The *prima facie* case thus made might have been overcome by disproving the issue of the warrants or the allowance of the claims on which they were based, or the legality or validity of such action by the board, if it had actually been taken. The denial of their signatures by the officers whose names were attached to the warants, or by experts or persons familiar with those signatures, or the presentation of the records of the board covering the dates on which the warrants were alleged to have been issued, if such records failed to show the authorization of the issue of the warrants, or the allowance of the claims on which the warrants were based, would have affected their validity. There was no evidence, however, introduced by the county tending to disprove the issue of the warrants in question by the board of supervisors, nor was there anything offered to attack or question the legality or regularity of their issue. The defendant introduced the testimony of the recorder of the county and clerk of the board, who was at the time of trial the custodian of the records. The records of the county produced by him showed that the records of the allowance of claims and issue of warrants in the year 1884 were entirely absent, and that the only record was that commencing in the year 1885. Neither he nor any other witness produced by the defendant offered testimony of any personal knowledge relative to the issue of the warrants in question by the board, or the allowance by the board of the claims in payment for which the warrants in question were issued. On this evidence the district court held that the warrants presented, apparently regularly and properly issued, were *prima facie* evidence of a valid, legal, and subsisting claim against the said defendant, Apache County, and that finding will not be disturbed by the appellate court.

It is contended by the appellant that the court erred in not sustaining defendant's general plea of limitation. Our statute provides (Rev. Stats., par. 2314) that "actions for debt where the indebtedness is evidenced by or founded upon any

contract in writing executed within this territory, shall be commenced and prosecuted within five years after the cause of action shall have accrued and not afterwards.'' The warrants sued on were issued in 1884. Suit was instituted in 1891. The appellant therefore contends that the claim is barred by the statute. It is necessary to consider the nature of the claim, and the statutes under which the warrants were issued, as well as the intermediate steps taken by the claimant during this time, in order to determine when the cause of action accrued; i. e. to determine at what time under the contract he had such a claim against the county as could have been enforced by an action at law. The Compiled Laws of 1877, under authority of which these warrants were issued, provide (chap. 6, secs. 9-11, 13) as follows:—

''Sec. 9. The county treasurer, when an order drawn on him as such treasurer, by the commissioners of his county, is presented for payment, shall, if there be money in the treasury for that purpose, redeem the same, and shall write on the face of such order, 'Redeemed,' the date of redemption, and shall sign his name thereto.

''Sec. 10. When any order or warrant shall be presented to the county treasurer for payment, and the same is not paid for want of funds, the treasurer shall indorse thereon 'Not paid for want of funds,' annexing the date of presentation, and sign his name thereto, and from that time until redeemed said order or warrant shall bear ten per cent interest per annum.

''Sec. 11. So soon as there shall be sufficient funds in the treasury of the county to redeem the orders or warrants drawing interest, the county treasurer shall give notice, . . . stating therein that he is ready to redeem said orders or warrants, and from the date of such notice said orders or warrants shall cease to bear interest.''

''Sec. 13. Orders or warrants drawn on the county treasurer, and properly attested, shall be entitled to preference as to payment out of moneys in the treasury properly applicable to such order, according to the priority of time in which the same may have been presented. The time of presenting such order shall be noted by the treasurer, and upon the receipt of any moneys into the treasury not otherwise appropriated, it shall be the duty of the treasurer to set apart the same, or so

much thereof as may be necessary for the payment of such order or warrant.''

It appeared in evidence on the trial of the case that the warrants sued on had in each instance, after their issue by the board, been presented to the county treasurer, and had been by him indorsed thereon ''Not paid for want of funds,'' with the date of the presentation, and the signature of the county treasurer affixed thereto. It was also proven on the trial that the first date at which there were sufficient funds in the county treasury to redeem any of the said warrants was on the nineteenth day of April, 1888, and at that time the notice for the presentation of such warrants was made as provided in the statutes. It was further proven that the funds then in the treasury for this purpose were provided under the Funding Act of 1887, approved March 2, 1887, for the purpose of enabling the several counties to pay, redeem, or refund their outstanding indebtedness by the issue of bonds for such purpose, which bonds should either be exchanged for the warrants thus outstanding and drawing interest, or be sold, and the funds arising from such sale placed in the county treasury, and known as the ''County Redemption Fund,'' and applied to the payment of outstanding county indebtedness under the provisions of that act, one of which was paragraph 2066 of the Revised Statutes of 1887: ''The treasurer shall pay no warrant nor exchange for any warrant under this act unless the same has been presented to the board of supervisors and approved by a majority of such board; provided if, after any warrant has been refused by the board, the person holding the same shall recover a judgment against the county on such warrant, the said judgment may be paid under the provisions of this act.'' It appears that the holder of these warrants presented the same, under the provisions of the last section, to the board of supervisors of the appellant in the year 1888, in order to have them approved by said board for payment or exchange by the county treasurer, according to his advertisement, under the Funding Act; and that the warrants were then refused by the board, marked ''Forgery,'' and returned to the holder. It is contended by the appellant that the cause of action against the county accrued on the date of the issue of the warrants, and that the statute began to run from that time. It is contended by the appellee that the cause of action

did not accrue until there were sufficient funds in the treasury to pay such warrants, which the testimony in this case shows to have been on the 19th of April, 1888. A county warrant is different from a promissory note, although it has been said that "a county warrant is, in legal effect, the promissory note of the county." *Board* v. *Day*, 19 Ind. 450. In the case of a promissory note or a bond with a definite time of payment, a cause of action accrues immediately upon the maturity of the instrument or the date of payment as fixed therein; but with a county warrant the case is different. "A municipal corporation is a subordinate branch of the domestic government of the state. As a local governmental institution, it exists for the benefit of the people within its corporate limits. Indebtedness may be incurred to a limited extent in carrying out the objects of the corporation. Evidence of such indebtedness may be given to the public creditors, but they must look to and rely on the legitimate mode of raising the funds for its payment. That mode is taxation." *Mayor etc.* v. *Ray*, 19 Wall. 468. It was held in *Brewer* v. *Otoe County*, 1 Neb. 373-384, in a similar case, arising under statutes almost identical with ours, that "Whoever deals with the county, and takes in payment of his demand a warrant in the character of these, no time of payment being fixed, does so under the implied agreement that, if there be no funds in the treasury out of which it can be satisfied, he will wait until the money can be raised in the ordinary mode of collecting such revenues. He is presumed to act with reference to the actual condition of the laws regulating and controlling the business of the county. He cannot be permitted, immediately upon the receipt of such warrant, to resort to the courts to enforce payment by judgment and execution, without regard to the condition of the treasury at the time, or of the laws by which the revenues are raised and disbursed. If there is money in the treasury belonging to the fund against which it is drawn, not otherwise provided, it is the duty of the treasurer to pay the warrant; but, if there be none, he must indorse upon it the fact of its presentation and non-payment for want of funds, and the holder must wait for his money until such time as it can be raised through the means which the legislature provides for the collection of revenues. Nor can any action rightfully be brought on such warrant until the fund is raised, or at least

sufficient time has elapsed to enable the county to levy and collect it in the mode provided in the revenue laws. The plea of the statute of limitations cannot be successfully made against these warrants, and, whenever it can be shown that the funds have been collected out of which they can be paid, or sufficient time has been given to do so in the mode pointed out in the statutes, their payment may be demanded, and, if refused, legally coerced." This decision of the supreme court of Nebraska was quoted and approved by Chief Justice Waite of the United States supreme court in *King Iron Bridge Co.* v. *Otoe County,* in 124 U. S. 459, 8 Sup. Ct. 582, in which the court held in a suit on warrants under similar circumstances to the case at bar that "the cause of action did not accrue when the payment was refused for want of funds, but only when the money for their payment is collected, or time sufficient for the collection of the money has elapsed." The application of this ruling to the case at bar is strengthened by the fact that it was rendered on the theory, as it is laid down generally, "that the judgment against a county or a municipal corporation is ordinarily no more than the mere establishment of a valid claim, for which it is the duty of the proper officers to provide means of payment out of the revenues of the defendant." Freeman on Executions, par. 22; Beach on Public Corporations, 1653; Dillon on Municipal Corporations, 576, and cases cited. But in this instance our statute specifically provides (Laws 1877, sec. 19, chap. 2): "When judgment shall be recovered against the county commissioners or against any county officer in an action prosecuted by or against him in his name of office no execution shall be awarded or issued upon such judgment, but the same unless reversed shall be levied and collected, as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same should have been adjudged, upon the delivery of the proper voucher." So that to hold that a right of action would exist in favor of the holder of the warrants or orders immediately after issue, and nonpayment for want of funds, would authorize a suit against the county, which would only have entitled the successful litigant to a warrant drawn upon the treasurer by the same board who had already drawn upon the treasurer the warrant upon which the suit was brought, which would be a useless proce-

dure, and demonstrates clearly that such is not the contemplation of the law.

The further fact is alleged that thirty-five of these warrants were payable out of the general fund and five of them out of the road fund, and it has been repeatedly held by the courts in different states, and by the supreme court of the United States in *Lincoln County* v. *Luning,* 133 U. S. 529, 10 Sup. Ct. 363, that "when payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided." No provision was made by the county for the payment of these warrants until 1888. The statute of limitations did not therefore begin to run against the warrants until that time, and this suit, filed in 1891, was within the five years' limitation.

It is next assigned that the court erred in not sustaining defendant's special plea of limitation. Defendant alleged that the appellee "presented the said warrants, and each of them, to the board of supervisors, on the ninth day of January, 1888, and the same were then and there adjudged to be forgeries, and disallowed, and rejected as binding obligations upon said county; and the plaintiff did not, within six months thereafter, bring action on said warrants against the said county after such rejection, as provided in paragraph 415, sec. 35, Rev. Stats." The Revised Statutes provide, in regard to the presentation and allowance of claims against the county (par. 412): "The board of supervisors must not hear or consider any claim in favor of an individual against the county unless an account properly made out, giving the items duly verified, is presented to the board within six months after the last item of the account accrued." Paragraph 414: "When the board finds that any claim presented is not payable by the county, or is not a proper county charge, it must be rejected. If they find it to be a proper county charge, but greater in amount than is justly due, the board may allow the claim in part and draw a warrant for the portion allowed. . . . " Paragraph 415: "A claimant dissatisfied with the rejection of his claim or demand or with the amount allowed him on his account may sue the county therefor at any time within six months after final action of the board but not afterwards." These are provisions in regard to open accounts and unliquidated

claims, and are intended to relieve the county from having to meet the items of an open account years after the data relative to the items thereof may have passed from the knowledge of the officers of the county, and they, therefore, be unable to establish the facts in regard thereto, or to resist fraudulent claims or incorrect statements; and do not apply to a liquidated claim that has been audited and determined. On this subject, in *Heffleman* v. *Pennington County*, 3 S. Dak. 162, 52 N. W. 851, the court said: "The duty of the board is to judicially investigate the validity and justice of the claim, and to allow or disallow the same, in whole or in part, as to such board shall appear just and lawful. While the immediate purpose of the warrant is to enable the claimant to whom it is delivered to draw from the county treasurer the amount of money therein named, yet it rests upon, and its issue and payment could only be justified upon, the theory that after the full investigation the county had found itself to be so indebted; so that the warrant is a formal and deliberate acknowledgment by the county of such indebtedness." In the case of the warrants now under consideration, when the board of supervisors audited and allowed the accounts presented, and issued the warrants on the treasurer in payment thereof, they took those claims from the list of unliquidated accounts, and by their certificate and acknowledgment of the indebtedness of the county thereon placed them with the outstanding indebtedness of the county. The validity and amount of the liability were then definitely fixed, and warrants on the treasurer given, payable at a future time. The treasurer could pay them in order of presentation without further action of the board, if he had funds in his hands applicable to that purpose; and the presentation to the board afterwards, in 1888, was not made under the provisions of paragraph 415, as claimed by appellant, but, as heretofore stated, was made under the provisions of paragraph 2066 of the Revised Statutes, for the purpose of having the board approve the payment or exchange of such warrants from the fund thus provided; and the said paragraph 2066 specifically provided that "if, after any warrant has been refused by the board, the person holding the same shall recover a judgment against the county on such warrant, the said judgment may be paid under the provisions of this act." It is under the provisions of this paragraph that this suit is brought,

This directly contemplates action on the warrant, which is "an instrument in writing" to which the five years' limitation applies, and the six months' limitation provided by paragraph 415 for open accounts before adjustment is inapplicable.

The fifth general assignment does not call for special attention or direct ruling, as it is not definite or specific, and simply raises in general terms the points already presented in the former assignments. The record disclosing no error, the judgment of the district court will be affirmed.

Street, C. J., Davis, J., and Sloan, J., concur.