[Civil No. 3533. Filed January 14, 1935.]

[40 Pac. (2d) 90.]

ED OGLESBY, as Assessor of Maricopa County, Arizona, Appellant, v. J. R. POAGE, Appellee.

Mr. Renz L. Jennings, County Attorney, and Mr. M. L. Ollerton and Mr. Hess Seaman, Deputies County Attorney, for Appellant.

Mr. E. O. Phlegar and Mr. A. Gray Gilmer for Appellee.

LOCKWOOD, C. J.—This is an appeal from a judgment of the superior court of Maricopa county commanding Ed Oglesby, as county assessor of said county, to grant an exemption from taxation to the property of J. R. Poage, hereinafter called plaintiff. The issue involved is solely one of law, and may be stated as follows: Does the exemption from taxation of the property of honorably discharged soldiers, granted by section 2, article 9, of the state Constitution, apply to the entire community property of a married soldier and his wife, or only to the one-half interest of the soldier therein? The question is of considerable importance to the class of persons affected, and, no matter which conclusion we reach, some of that class will be favorably and some adversely affected. If we affirm the judgment, no exemption at all will be allowed if the community estate exceed $5,000 in value; if we reverse it, the $2,000 exemption applies, even though the community estate almost reaches $10,000.

■ There are certain preliminary questions of procedure which we must dispose of before we reach the merits of the appeal. Defendant filed both a motion to strike and a demurrer to the complaint. Plaintiff claims that the motion to strike was not supported by a statement of points as required by subdivision 5, rule IV, of the Uniform Rules, which reads as follows:

"When any demurrer, motion or similar pleading shall be filed, the party so presenting it shall at the same time file a statement of the precise legal point or points he relies upon, a copy of which statement must be served on opposing counsel in the usual manner. A brief in support of such statement may be filed and served in the same manner, and in such case the latter shall have ten days from the date of service to file an answering brief, which must be served in the same manner as the original, and a reply may be filed in like manner in five days after the answering brief has been filed, and the matter shall then be deemed submitted, unless the court shall require oral arguments thereon. A failure to file such statement will be considered by the court as a formal waiver of the demurrer, motion or other objection raised, and an order to that effect will be entered in the minutes. The statement filed will be deemed to raise all points covered by the pleadings to which it refers, and all matters not contained in such statement will be considered as waived."

The motion to strike covered certain portions of the complaint referring to the action of the state tax commission on the legal question involved herein, and to claims for exemption on the same ground made by plaintiff in previous years. The demurrer was a general one.

The statement of points reads as follows: "The petition shows on its face that all the property of the petitioner has, on his claim therefor, been exempt from taxation in compliance with Section 2, Article

9, of the Constitution of the State of Arizona." This is utterly insufficient to indicate the legal objection to those parts of the complaint against which the motion to strike was directed and, under the rule, we must consider the motion as waived. It is, however, enough to raise the question of the sufficiency of the complaint to state a cause of action, for, since the complaint shows that plaintiff had already been granted an exemption from taxation of one-half of the community estate, if that is all he is entitled to under the Constitution, he has no cause of action.

■ We consider, therefore, the demurrer. The first matter we must pass on is the effect of the action of the state tax commission in upholding the position of plaintiff. It is urged that the statutes which prescribe the powers of the tax commission authorize it to determine conclusively what property is and what is not exempt. If by this plaintiff means that, in reference to a situation like the present, the commission determines conclusively the valuation of the property assessed, unless it has violated the law in a matter not involving discretion, or has abused its discretion, or when an appeal is taken under section 3065, Revised Code of 1928, he is correct. *State* v. *Superior Court,* 30 Ariz. 620, 249 Pac. 768. But the question here is not as to the valuation of plaintiff's property, but as to what, within the meaning of the constitutional provision, is plaintiff's property for the purpose of exemption. The statute does not attempt to grant the power to determine that question conclusively to the commission, nor would it be constitutional if it did. This court, in the last resort, determines the meaning of a provision of the state Constitution, and all persons, public and private, must accept and obey that interpretation, unless and until it is determined by the proper tribunal that

under such interpretation the federal Constitution is violated.

We consider then the meaning of the constitutional provision. It reads, so far as material to this case, as follows:

"That there shall be exempt from taxation all Federal, State, county and municipal property. . . . There shall be further exempt from taxation the property of widows, honorably discharged soldiers, sailors, United States Marines, members of revenue marine service, and army nurses, residents of this state, not exceeding the amount of two thousand dollars, where the total assessment of such widow and· such other persons named herein does not exceed five thousand dollars; provided, that no such exemption shall be made for such persons other than widows unless they shall have served at least sixty days in the military or naval service of the United States during time of war, and shall have been residents of this State prior to January 1, 1927. All property in the State not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law. This section shall be self-executing." Section 2, art. 9.

A claim of exemption from taxation is construed *strictissimi juris*. ·Philadelphia etc. R. Co. v. *Maryland*, 10 How. 376, 13 L. Ed. 461. And· all property not expressly declared exempt is subject to taxation. Section 2, art. 9, *supra*. It will be noted the exemption is not to the families of the various persons named in the section, but that it is solely an individual one. No one would contend that, if a soldier and his wife had separate estates of the value of $1,000 each, the entire $2,000 was exempt from taxation under the constitutional provision. The real question is, What is the "property" of a married man in the community estate? We have dis-

cussed this question from many different angles, and as affected by varying situations, and we quote from some of these decisions:

" 'If a terse summary of the aims and results of community ownership be attempted, it may be said that the object of the system is to make a beneficial cotenancy between husband and wife, of such property as either or both may acquire, otherwise than by gift or exchange for "separate property," during the coverture, and that such ownership, practically indissoluable during the existence of the marriage, generally involves the right of survivorship when the first owner who dies leaves no descendant, but otherwise resembles a tenancy in common.' Reeves, Real Property, § 691, p. 982.

"That the interest of the wife in the community property during the coverture is not a mere possibility —not the expectancy of an heir—is quite apparent. The old saying is not true that community is a partnership which begins only at its end. Upon the dissolution of the community by death, the wife does not inherit her share of the common property, but with the death of the husband the management and control of the statutory agent or trustees ceases. The wife acquires not her share for that was already hers, but in addition to her share she acquires the right of management, control, and disposition of that share. Her status being thereby fixed as that of a *feme sole*. If there be no child or children of the deceased husband, all of the common property goes to the surviving wife. She has her share in the property, and in addition, by right of survivorship and not as an heir, she acquires the share that belonged to the husband, and she takes all of the property in her own right, and with respect to the management, control, and disposition of such property is reduced to the status of a *feme sole* and must thenceforward with respect to it act for herself. That the interest of the wife in the community property during the coverture is more substantial than that of an heir's expectancy. . . . " *LaTourette* v. *LaTourette,* 15 Ariz. 200, 137 Pac. 426, 429, Ann. Cas. 1915B 70.

"The third is that the wife's interest in the community estate is a vested legal one, the same as the interest of any other partner in partnership property, but that for business reasons the statute makes the husband the agent of the community, to handle and dispose of the community personalty for the benefit thereof. This view is held in the state of Washington. *Olive Co.* v. *Meek,* 103 Wash. 467, 175 Pac. 33; *Marston* v. *Rue,* 92 Wash. 129, 159 Pac. 111." *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175, 176.

"Under our law, therefore, the status of marriage is more analogous to that of a partnership than to any other status known. It has, however, at least one important quality not possessed by the ordinary partnership. Both, it is true, arise out of a voluntary contract, and in both the individual rights of the parties in the partnership property are subordinate to the rights and liabilities of the partnership. In the ordinary partnership, however, the state as such is not interested. The partners may dissolve it at will, subject, of course, to the legal consequences of the dissolution. Marriage, however, as is well stated in *Hilton* v. *Roylance, supra* [25 Utah 129, 69 Pac. 660, 95 Am. St. Rep. 821, 58 L. R. A. 723], 'is regulated . . . and can be dissolved only through the sovereign power of the state, whenever justice to either or both parties or the welfare of the public demands it. . . . It is apparent that many of the rules of law applicable to the marriage status differ widely in material respects from those applicable to mere civil contracts.'

"If marriage were no more than an ordinary partnership, with all its rights and liabilities, the course to be followed in the case at bar would be clear. Plaintiff, on obtaining his judgment against defendant Gail M. Paschal, would have a right to demand that the partnership be wound up, the property divided after the payment of the partnership debts, and the interest therein of the judgment debtor subjected to execution. If we attempt to apply this rule to the marriage status, it is apparent that it would destroy to a great extent the very thing the desire to protect which led the state to assume its control over mar-

riage.. The state's principal interest in the marriage status is the protection of the family as a unit, and of the minor children. The whole history of our legislation in Arizona, as well as elsewhere, shows this to be true. There are few things which would do more to destroy the solidarity of family life and the proper maintenance of the children of the marriage than the possibility that the community estate and earnings primarily intended by the state for this protection could be diverted from that purpose to satisfy debts in no way connected with the family. Even in the ordinary partnership, a judgment against the individual partner cannot be collected from partnership assets until after the business is wound up. Much more is this necessarily true of the marital partnership, and since it is against public policy for that to be destroyed, except when the state, for good cause shown, approves the dissolution of the family unit, until such legal dissolution occurs it would follow a creditor of the one partner may not enforce a judgment for an individual debt against the property of the community.

"In the absence of a positive statutory injunction to the contrary, we hold, therefore, that, so long as the community estate remains such, it may not be subjected to the individual debts of either husband or wife contracted before marriage any more than those contracted after marriage." *Forsythe* v. *Paschal,* 34 Ariz. 380, 271 Pac. 865, 866.

It will be seen that the community estate and the interest of the spouses therein is not exactly like any estate known to the common law. It is not a tenancy by the entirety, for in that one spouse cannot by will or deed affect the right of survivorship of the other to the entire property, while either spouse may, by will, dispose of his or her interest in the community. It is not a joint tenancy, for in that, while neither spouse may by will defeat the right of survivorship, either one may alone by deed convey his or her estate to a third party, and thus terminate the joint

tenancy, while neither can so terminate the community estate; the sole exception to the last rule being that the one may convey to the other, on the theory that an acceptance by the grantee is a joining in the conveyance. *Schofield* v. *Gold,* 26 Ariz. 296, 225 Pac. 71, 37 A. L. R. 275.

Nor is it a tenancy in common, for in that either party may freely dispose of his interest or demand a partition, and it is subject to attachment and execution for his debts, while the community estate may not be partitioned, nor is the interest of either spouse subject to his or her separate debts.

All that we can say is that it is *sui generis,* and is a creature of the statute. We have held repeatedly that the interest of the wife is a vested one, in no way dependent on her husband's volition, nor subject to his disposal, except as he may act as agent in the disposal of personal property. *LaTourette* v. *LaTourette, supra; Cosper* v. *Valley Bank, supra; Forsythe* v. *Paschal, supra.* And, necessarily, the husband's interest is equally a vested one. When the marital status, which alone is the band that holds the vested interests together as against third parties, is severed, either by death or divorce, without further action those interests are separated automatically and held, by the former spouses separately in the case of divorce, or by the survivor and the heirs of the other if the dissolution be by death, as tenants in common. *Goulette* v. *Goulette,* 114 Wash. 689, 195 Pac. 1045; *LeBaron* v. *LeBaron,* 23 Ariz. 560, 205 Pac. 910. That these interests are separate for the purpose of taxation is recognized by the federal government when it allows separate returns to be made for the purpose of community income taxes. *Goodell* v. *Koch,* 282 U. S. 118, 51 Sup. Ct. 62, 75 L. Ed. 247; *Poe* v. *Seaborn,* 282 U. S. 101, 51 Sup. Ct. 58, 75 L. Ed. 239. And our legislature has taken the same

position. Chapter 8, First Special Session, 933. If, as contended by appellee, the husband holds his interest in the community *per tout et non per my,* the Supreme Court of the United States would doubtless have applied the rule of *United States* v. *Robbins,* 269 U. S. 315, 46 Sup. Ct. 148, 70 L. Ed. 285, to Arizona community incomes.

It is true that in Arizona the property tax on the community estate is assessed to the spouse in whose name the record title appears to stand. But this is merely done as a matter of convenience to the assessor in keeping his books, and since it makes no difference to the taxpayer, for the rate of property tax, unlike that of the income tax, is the same on a large or a small assessment, ordinarily no complications arise.

But, it may be said, since the community estate may not be separated except by a dissolution of the marriage, how can a tax lien be enforced against the interest of the wife in the community? The prohibition against the enforcement of a separate debt against the interest of the debtor in community property is based on public policy, established by the legislature for the protection of the family. *Forsythe* v. *Paschal, supra.* But, constitutional provisions are superior to any act of the legislature, and, since section 2, article 9, *supra,* exempts only the property of the soldier and not that of his wife, and is declared to be self-executing, so far as taxation is concerned, her property must pay its share of taxes, regardless of the effect of the enforcement of the payment on the community. The only way in which this can be done without violating the constitutional inhibition against taxing the property of the soldier is by an assessment to her of her undivided one-half interest in the community estate. In that case a failure on her part to

pay the tax would result in a sale of that interest. *Ronkendorff* v. *Taylor's Lessee,* 4 Pet. 349, 7 L. Ed. 882. Since the interests of the husband and wife in the community estate are each vested and capable of being separated, and since the Constitution of Arizona clearly states that it is the property of the husband which is not subject to taxation while that of the wife is, it follows that such exemption only affects the husband's interest in the community, and it is the duty of the county assessor to assess the wife's undivided one-half interest in the property involved.

The judgment is reversed, and the case remanded with directions to deny the writ of *mandamus.*

McALISTER and ROSS, JJ., concur.