[Civil No. 3674. Filed October 10, 1935.]

[50 Pac. (2d) 15.]

COUNTY OF MARICOPA, STATE OF ARIZONA, a Municipal Corporation, et al., Appellants, v. BARNEY R. HODGIN, Appellee.

Mr. Harry Johnson, County Attorney of Maricopa County, and Mr. E. G. Frazier, Deputy County Attorney, for Appellants.

Mr. George F. Macdonald, for Appellee.

Messrs. Mathews & Bilby, Mr. T. K. Shoenhair, Messrs. Chalmers, Fennemore & Nairn, Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, Messrs. Cunningham, Carson & Gibbons, Messrs. Armstrong, Kramer, Morrison & Roche, Mr. C. B. Wilson and Messrs. Sutter & Gentry, *Amici Curiae*.

ROSS, J.—For the year 1934, the plaintiff, Barney R. Hodgin, paid his taxes under protest and then brought suit to recover them. The pleadings raise no issue of fact and, upon motion, judgment was entered against Maricopa county, ordering and directing the county treasurer of Maricopa county to repay or return said taxes, amounting to $77.90, forthwith in cash. The defendants, Maricopa county, its board of supervisors, and treasurer, have appealed.

Plaintiff claims that he was exempt from the payment of taxes for the following reasons: That the total assessment against him did not exceed $5,000, but amounted to only $3,055 on the community property of his wife and himself, his moiety thereof being one-half or $1,527.50; that he had served as a soldier in the military service of the United States for more

than sixty days during time of war, had been honorably discharged, and had resided in Arizona prior to January 1, 1927; that therefore his community interest was and is exempt from taxation under section 2 of article 9 of the Constitution and subdivision 4 of section 3066 of the Revised Code of 1928, which provide that such a person as he, if his total assessment does not exceed $5,000, shall have an exemption of $2,000.

The facts unquestionably bring plaintiff within the terms of the exemption as expressed in the Constitution and statutes. In *Calhoun* v. *Flynn,* 37 Ariz. 62, 289 Pac. 157, we held that the exemption is mandatory and self-executing, and, if not claimed of the county assessor at the time of assessment as the law provides, could be paid the county treasurer under protest and thereafter recovered. This latter method is the one here followed.

The exemption may be claimed out of the community (*Oglesby* v. *Poage,* 45 Ariz. 23, 40 Pac. (2d) 90), and this action is to recover one-half of the taxes paid on community property.

The question is not whether plaintiff should recover the tax, but goes to the amount and the form of the judgment. Defendants concede plaintiff's property was exempt, but object to the judgment for the following reasons: (1) They say after the treasurer, as tax collector, received said sum of $77.90 he distributed it as follows: To Maricopa county $39.10, to the state $15.28, to school district No. 48, in which the property is located, $23.52, such amounts being the proportion of said tax respectively collected for said taxing units; (2) that the judgment against the county should have been for only $39.10, that being the proportion of the tax it retained, and that plaintiff should pursue the state and the school district for the

sums they received from the county treasurer; that in no event should the judgment direct the defendant treasurer to pay it, but that the judgment should take the regular course of claims against the county; that is, be budgeted, be filed with the board of supervisors, and paid by warrant when funds are available, as other claims against the county.

Plaintiff insists that the judgment for the full amount of the tax was correctly entered against the county with directions to the county treasurer to repay the tax to plaintiff.

The solution of these questions depends upon the construction of the section of the statute providing a remedy for the taxpayer, who is compelled to pay his taxes before he may have a judicial determination of their legality, and from other but related provisions of the law. The controlling statute is section 55, chapter 103, Laws 1931, being the same as section 3136, Revised Code of 1928, reading:

"No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided."

██ It seems quite clear to us that this section contemplates but one action for the recovery of the tax and that such action should be against the taxing unit that collected the tax. The phrase "after payment an action may be maintained to recover any

tax illegally collected'' implies, as explicitly as if direct language to that effect had been used, that the action shall be against the taxing unit that illegally collected the tax. It would be an anomaly in the law to say that the person, natural or artificial, who gets from another money to which he is not entitled is not the proper person to sue for its recovery. The tax unit or its officer against whom no injunction for the collection of any tax shall run is the tax unit, if it shall have collected the tax, that is designated by the law as suable for its return. But it is said if this is allowed the county, although the treasurer as tax collector followed the law as set forth in section 3111, Revised Code of 1928, in apportioning to the state and school district their proportion of the tax, is mulcted for the whole tax, with no remedy available to recover from such units, and that therefore the taxpayer should be required to sue such units for the proportion of the tax each received from the county.

Section 3132, Id., provides that when a tax has been set aside as invalid that proportion thereof which has been paid to the state treasurer shall be refunded to the county at the next settlement between the county treasurer and the state treasurer. Therefore, so far as the sum paid to the state is concerned, the county is amply protected.

There is no such statutory provision with reference to a tax apportioned and paid to a school district. But whether the county can recover from the school district or not we think immaterial in view of the construction we have placed on section 55, chapter 103, *supra*.

We conclude that the tax having been collected by the county, the action is maintainable against the county for the recovery of the whole tax, and that the

taxpayer is not required to pursue the different tax units to which some of the tax may have been apportioned and paid.

Under the law the county is constituted the agent of the state to collect the taxes for the state, the county, and school districts, and the law has made it responsible to the taxpayer for a tax illegally collected. As is said in one case:

"It was never intended to turn the tax payer over to the tedious, protracted and expensive remedy of getting his money in parcels from the state or county, and their several funds." *Lauman* v. *County of Des Moines,* 29 Iowa 310.

There are cases that hold the taxpayer, who seeks to recover taxes illegally collected from him, may not sue the taxing district that collected the tax, after it has been apportioned to several taxing districts, for the whole tax, but must sue each of them for the amount received by it. Where such a rule has been announced, either there was no governing statute or, if so, it was very different in its terms from our section 55, *supra.*

 As heretofore stated, the judgment runs against Maricopa county and directs the county treasurer to pay it. It was admitted in defendants' answer that there were funds on hand and in the county treasury sufficient "to refund in cash any amount which is adjudged to be due plaintiff." Notwithstanding such admission the question is, Does the law permit or authorize the judgment entered? In other words, Has the court jurisdiction to direct the county treasurer to pay the judgment, as was done in this case? It is the contention of the defendants that the direction in the judgment ordering the county treasurer to pay it exceeds the court's power. The answer to this question is not unattended with difficulty.

Section 55, *supra,* is the same as section 3136, Revised Code of 1928, and, so far as the procedure to recover a tax and the manner of its repayment are concerned, the same as paragraph 4939, Revised Statutes of Arizona 1913 (Civil Code). It is evident from the language used in these sections that the legislature intended that taxes illegally collected should be returned in kind to the taxpayer. We have had occasion to discuss and construe section 55 (section 3136, and paragraph 4939) heretofore. In *Yuma County* v. *Arizona & S. R. Co.,* 30 Ariz. 27, 243 Pac. 907, 908, we held that the purpose of the provisions of the section was not to allow the taxpayer to pay his taxes under protest and then contest the value of the property as assessed and equalized, since that was provided for in paragraph 4887, Revised Statutes of Arizona 1913 (Civil Code). We said, speaking of said paragraph 4939, now section 55, *supra:*

"If any item entering into the rate be not for a public purpose or is authorized by invalid legislation, or if the taxpayer is assessed with property that is exempt or that he did not own, or an overvaluation is the result of the adoption of a rule of appraisement which conflicts with the constitutional or statutory direction and operates unequally, not merely on an individual but a large class, it may be shown in this action and a recovery be had. 26 R. C. L. 453, § 409; *Stanley* v. *Albany County,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000. . . .

"We believe the legislature intended to give the taxpayer the right to test the validity of the tax upon any ground upon which he has not had an opportunity to be heard under other provisions of the law."

Although section 55, *supra,* was intended to cover cases other than those of overvaluation, the legislature has provided the same manner and time in which to repay the taxpayer, if successful, as in overvaluation cases. It therefore becomes necessary to deter-

mine the kind of judgment the court has power to enter, when the contest is over the valuation of the taxpayer's property. It is provided in section 55 that if the court determines the tax was illegally collected, "the excess shall be refunded in the manner hereinbefore provided." The same language is found in section 3136, *supra*. The language employed to express the same thought in paragraph 4939, *supra,* is:

"But after payment, action may be maintained to recover any tax illegally collected, in such manner and at such time as may now or hereafter be provided by law. In case the amount of the taxes due shall be finally determined to be less than the amount so paid, the excess shall be refunded in the manner provided in sec. 49 of this act. [Par. 4887.]"

Paragraph 4887, which is but a rescript of paragraph 3875, Revised Statutes of Arizona 1901 (Civil Code), provides that the taxpayer who is dissatisfied with the valuation of his property by the county board of equalization may appeal from the board's decision to the superior court by taking certain steps, one of which is paying the county treasurer the full amount of the tax levied and assessed upon his property by the board, accompanied by a written protest, etc. It is provided that "at the time of such payment the county treasurer shall deliver to the party making the payment a receipt for the amount so paid." If the payment of the tax is not made before taking the appeal, the appeal must be dismissed. The paragraph further provides for the judgment to be entered in the following language:

"If it be determined by the court that the amount of such assessment is excessive, judgment shall be rendered in favor of the appellant and against the county for the amount of taxes which the court determines to be excessive, with interest thereon at the rate of six per cent. per annum from the time of such pay-

ment, and the costs of the appeal, which shall be paid as other judgments against the county. If the court shall determine that the full cash value of the property is greater than the valuation fixed by said board of equalization, judgment shall be rendered in favor of the county and against the appellant for the taxes and costs of suit due on the value of such property as determined by the court in excess of the amount fixed by said board of equalization, which judgment shall from the time of its rendition, be a lien upon all the real and personal property of the appellant within the county, and execution shall be issued to enforce said judgment as in civil cases."

Under the provisions of the laws as they existed prior to the 1928 revision, the taxpayer, whether his action was to contest the valuation of his property as provided in paragraph 4887 or its legality under paragraph 4939, was entitled, if successful, to a judgment for the excess or illegal tax to "be paid as other judgments against the county."

In the 1928 revision of the laws there was inserted section 3065, which provides what the judgment shall be in litigation over the value of the property as fixed by the state tax commission and the state board of equalization, and so much thereof as is pertinent reads as follows:

"Should the court find that the assessment is excessive, then the court shall find the full cash value of the property, and render judgment for appellant and against the county; if the court finds that the assessment represents the full cash value of the property, then the action shall be dismissed with costs against appellant; if the court finds that the valuation levied and assessed against appellant is below the full cash value of the property, then the judgment shall be for the county and against appellant for the costs of the appeal and the taxes due on such property if it had been originally assessed at its full cash value. Such judgment shall be a lien upon the real and personal property of the appellant with like force and effect

as though the assessment had originally been in the amount of the judgment, and execution may issue upon the judgment.''

The same provisions were adopted when litigation is over the valuation of the property as fixed by the county board of equalization. Section 3090, Rev. Code 1928.

Section 3065, *supra,* which is a revision of paragraph 4887, *supra,* omits to say how the judgment, when in favor of the taxpayer, shall be paid, whereas the latter section provides that the judgment ''shall be paid as other judgments against the county.'' The language of these two sections differs in other respects in that it is much reduced and condensed in the revision, but with no manifest purpose to change the meaning. Both require the taxpayer who wishes to contest the value placed upon his property to take certain preliminary steps. Both provide that the issue shall be tried in ten days, with or without a jury, unless continued by written agreement of the parties, and that evidence as to the full cash value may be submitted by the county and the taxpayer. The revision provides that if the court finds the assessment by the board of equalization excessive, the court shall render judgment for the excess in favor of the taxpayer and against the county. Before the revision, paragraph 4887 provided that such judgment was to be paid ''as other judgments against the county.'' We do not think the omission from the revised statute should be construed as an intention to change the form of the judgment or the manner or time of its payment. As was said in *Re Estate of Sullivan,* 38 Ariz. 387, 300 Pac. 193, 195:

''It is well known that it was the object of the code commissioner and the Legislature in preparing the Revised Code of 1928 to change the legal meaning of the existing law as little as possible, but, as stated in

the preface to the official edition of said Code, 'to reduce in language' and to avoid redundancy. Chapter 35, Session Laws 1925. We should therefore presume that when a word, a phrase, or a paragraph from the 1913 Code is omitted from the Code of 1928, the intent is rather to simplify the language without changing the meaning, than to make a material alteration in the substance of the law itself.'' See, also, *State Tax Commission* v. *United Verde Extension Min. Co.*, 39 Ariz. 136, 4 Pac. (2d) 395.

Under the provisions of section 55, *supra*, the tax illegally collected is to be refunded ''in the manner hereinbefore provided''; that is, it shall be repaid in the manner judgments against a county for excess taxes because of overvaluation are repaid. In other words, the manner and time of paying any judgment recovered by a taxpayer under section 55 are the same as the manner and time of paying any judgment recovered by a taxpayer under section 3065.

■ A general judgment against a county, such as the court is authorized to give under sections 55 and 3065, *supra,* must be taken care of by the county as other claims or debts of the county are paid or discharged. It cannot be collected on execution, since the policy of the law will not permit a levy on the county's or its citizens' property to satisfy the judgment. Neither is there any statute authorizing the court to direct the county treasurer to pay it, the court's power being limited to the determination that there is a debt and the entry of judgment therefor.

■ When a judgment is rendered against a county, it is the duty of the board of supervisors to apply funds in the treasury of the county not otherwise appropriated to its payment, or, if there are no such funds, it is its duty to budget the judgment as a county expense and levy a tax to pay it. 7 R. C. L. 967, § 41; *Apache County* v. *Barth*, 6 Ariz. 13, 53 Pac.

187; *Emery County* v. *Burresen,* 14 Utah 328, 47 Pac. 91, 60 Am. St. Rep. 898, 37 L. R. A. 732; *State* v. *Board of Commrs.,* 16 Mont. 271, 40 Pac. 595. The judgment to be entered under sections 55 and 3065, *supra,* for taxes illegally collected is a money judgment. The statutes give the court no power or authority to direct its payment by the county treasurer. Obedience to such an order by the county treasurer would be a violation of a positive statute, for he may:

"5. Disburse the county money only on county warrants, issued by the board of supervisors, signed by the chairman and clerk of such board, or as provided by law." Subdivision 5, § 864, Rev. Code 1928.

The trial court treated the taxes paid by Hodgin under protest as a trust fund and not as tax money belonging to the county or the taxing units for which it was collected. There is as much statutory authority to treat taxes paid without protest as trust funds as there is to so treat taxes paid under protest. A careful examination of our revenue laws fails to disclose any intention on the part of the legislature to have the protested tax under section 55, *supra,* treated or handled any different from taxes willingly paid. The receipt issued for the taxes is the same in both cases. After collection, they are kept by the same custodian, are apportioned and paid out or disposed of without distinction.

While the exemptions to persons falling within the classifications in section 2, article 9, of the Constitution and subdivision 4, section 3066, Revised Code of 1928, as we said in the Calhoun case, *supra,* are absolute, the mode and manner of protecting and securing that right is left with the legislature. Section 11, article 9, of the Constitution reads:

"The manner, method and mode of assessing, equalizing and levying taxes in the State of Arizona shall be such as may be prescribed by law."

The legislature has prescribed when and how the exemption may be presented and proved. Chapter 91, Session Laws 1929. It had the right to do this. The legislature also has the right to require one who has not pursued the method prescribed to pay his taxes before he may litigate the question of his right to the exemption. It could have provided, had it seen fit, that the taxes should be held intact and disposed of in accordance with the result of the litigation, but it rather chose to treat the taxes as belonging to the county and the taxpayer as a judgment creditor, to be repaid as other judgment creditors.

The legislature has provided for a system of pay-as-you-go for the counties of the state. Under such system, the board of supervisors is required to make out in advance a budget of the current and fixed expenses of each fiscal year and to levy a tax on the property of the county, which, together with revenues from other sources, will take care of such charges. If the courts may direct the treasurer to pay out of such budgeted fund judgments for taxes paid under protest, the fund would be diverted from the purposes for which it is levied and collected and the budget become a means to produce revenue but no guide to its disposal. Salary, general and special fund warrants of the county, for the payment of which the budget has provided, might thus be postponed in favor of the courts' judgments for the payment of taxes paid under protest. This would derange the budget, cast doubt upon the value of county warrants, and defeat the very purpose of the Budget Law (Rev. Code 1928, § 3096 et seq.).

The judgment should be modified by striking therefrom the direction to the county treasurer to pay it, and, as so modified, it is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.