[Civil No. 4299. Filed May 16, 1941.]

[113 Pac. (2d) 353.]

CITY OF PHOENIX, a Municipal Corporation; ROY R. HISLOP, as City Manager of the City of Phoenix; JOE RICE, C. E. VAN NESS and AL N. ZELLMER, as Members of the Civil Service Board of the City of Phoenix; WILLIAM G. HARTRANFT, J. H. MOEUR, VIC HOUSEHOLDER, MRS. F. A. BONS and MRS. GLENN A. SNODGRASS, as Members of the Park Board of the City of Phoenix, Appellants, v. JOHN J. POWERS, Appellee.

Mr. Hess Seaman, City Attorney, and Mr. William C. Fields, Assistant City Attorney, for Appellants.

Mr. George T. Wilson, and Messrs. Minne & Sorenson, for Appellee.

ROSS, J.—This is an appeal from a judgment rendered in a *mandamus* action brought by John J. Powers against the City of Phoenix, its Manager, its Civil Service Board, its Park Board and George C. Robinson to establish the plaintiff's right to the position of general park foreman and for the salary attached to such position. Robinson was made a party defendant because he had been appointed to such position of general park foreman, being the position from

which plaintiff contends he had been wrongfully removed by the Park Board.

The trial court heard the evidence and gave judgment in favor of plaintiff, holding that he was entitled to the position sought and the salary, less what he had been able to earn since his separation therefrom.

The facts as found by the court are, in substance, as follows: That on or about July 17, 1934, by open and competitive examination, plaintiff qualified for the position of park maintenance supervisor under the city's classified civil service and thereafter was placed upon the eligible list for appointment to such position; that on or about August 22, 1935, he was appointed by the Park Board to the position of landscape architect in the Engineering Department of the city's park and playground system, where he remained until December 16, 1936, when he was transferred to the position of park maintenance supervisor at a salary of $200 per month; that on or about July 30, 1938, the Park Board purported to abolish the position of park maintenance supervisor and to discharge and dismiss plaintiff, effective as of September 1, 1938; and instead and place thereof the Civil Service Board established the position of general park foreman, with identical duties, to which defendant Robinson was appointed, who at the time was not on the eligible list of the Civil Service Board and who had not qualified for such position.

The city contends the court's finding that plaintiff regularly qualified for the position of park maintenance supervisor by open and competitive examination is not supported by the evidence but is contrary to the evidence.

The Rules and Regulations of the Civil Service Board require public notice, for at least ten days, of the time and place of competitive examinations for positions in the classified service of the city. In ac-

cordance therewith, the Civil Service Board gave notice that such examination for park maintenance supervisor would be held at the Monroe School Building in Phoenix, Arizona, on July 17, 1934, at which time and place eight persons appeared and took the examination and were graded under the directions of the Civil Service Board. The plaintiff thereafter appeared before the board or its secretary on July 24th and explained that he did not receive notice of the time and place of the examination until two or three days after it was held, and that day obtained permission to take and did take an examination (there being no other applicant taking said examination), and was given a rating higher than any of those examined on July 17th. He was accordingly placed on the eligible list and certified by the personnel board to the Park Board for employment.

It is claimed this procedure was not in accordance with the Rules and Regulations of the Civil Service Board and that, therefore, plaintiff was not qualified for the position of park maintenance supervisor when he was certified. Items 4 and 5 of Rule Five of the Rules and Regulations of the Board are specifically cited as not allowing the examination given plaintiff. They read:

"Item 4. In all competitive examinations all necessary explanations shall be made to the whole class. No question shall be explained to any individual candidate.

"Item 5. No candidate shall be granted a second or special examination, or any second or special test, either written or physical, preliminary to or in connection with any examination held hereunder, unless it be shown to the satisfaction of the Board that his failure to appear for, or to gain admission to, or to complete such examination or test, was due to a manifest error or mistake for which the Board is responsible, the nature of which shall be set forth in its minutes."

██ It is provided in section 3 of Ordinance No. 715 of the city that the Civil Service Board may make rules for the classified service, which shall have the force and effect of law when approved by the City Commission. It is also provided in said section that the Civil Service Board ''shall keep minutes of its proceedings and records of its examinations.'' No reason is found in the records or minutes of the Civil Service Board for holding the special examination of plaintiff on July 24th. Whether it was due to an error or mistake of the Board that plaintiff failed ''to appear for . . . such examination or test'' (on July 17th), we do not know. However, granting that the Civil Service Board did not follow the procedure it had adopted for competitive examinations, we do not regard such failure as fatal to plaintiff's employment. The evidence is undisputed that plaintiff possessed the necessary technical skill and learning for the position and that the quality of service rendered by him was entirely satisfactory. Then, no objection in the trial, by answer or otherwise, was made to the manner of his examination. No suggestion of fraud or unfairness appears to have been made. While a special test or examination should not be given an applicant unless his failure to take the regular one is due to manifest error or mistake of the Board, where no point is made of it at the trial and it is first raised on appeal, as was done here, especially in view of plaintiff's qualifications being unquestioned, we think the objection should be rejected.

Subsection 4 of section 3 of Ordinance No. 715, *supra,* provides for an eligible list for successful applicants, and such lists are in force for no longer than two years. The city attorney contends that plaintiff's name was certified to the Park Board on July 17, 1934, or about that time, and that when he was transferred from the position of landscape architect on December

16, 1936, to the position of park maintenance supervisor he was not entitled to be on such list and for that reason his appointment was not legal. The evidence is that while plaintiff took the examination for park maintenance supervisor, he possessed special qualifications as a landscape architect. When he was given the appointment on August 22, 1935, of landscape architect he was installed in the classified civil service of the city and the change from that position to park maintenance supervisor on December 16, 1936, was but a transfer or promotion. Subsection 9 of section 3 of said ordinance expressly provides ''for transfer from one position to similar position in the same class and grade.''

 We think it satisfactorily appears that plaintiff was appointed from an eligible list before two years had expired after his name first appeared thereon.

On May 12, 1938, the Civil Service Board entered an order re-classifying the employments and seniorities in the maintenance division of the park department, to be effective on and after May 15, 1938. In such order the position of landscape gardener was established and plaintiff allocated thereto with seniority dating from December 16, 1936. The position of general park foreman was also established and Robinson allocated thereto as a temporary appointee. In such order the Civil Service Board called for information in writing of all employees performing duties for which they had not been certified, so that an examination might be had of such persons for proper classification.

It is contended by the city that plaintiff never took the examination for landscape gardener and therefore had no standing in the civil service. It appears, however, that he was not asked to take such examination.

The record fails to show that any examination was ever held after the establishment of such position.

It also sufficiently appears that while plaintiff was park maintenance supervisor he was performing the duties of landscape gardener.

On July 30, 1938, the Park Board, with the approval of the Civil Service Board, abolished the positions of supervisor of maintenance and landscape gardener, effective September 1, 1928, thus terminating plaintiff's employment with the city. This was done, according to recitals in the order, "for the reason of economy."

■■ The plaintiff admits the right and the duty of the city to keep down the expenses of the park department and to operate within the budget. He also admits that to that end the city has power to consolidate or abolish positions, to reduce salaries and to lay off employees. However, in doing any of these things, the city's action must be in accordance with the Civil Service Rules. It must recognize seniority. If the only change in the classified position is its name, the legal occupant thereof cannot be separated from it and an employee of junior right or no right given the position. Nor can such tactics be employed merely to get rid of an eligible employee. In confirmation of this statement of the law, we quote excerpts from a few cases:

" . . . if what was done in effect was the change of name in the office only, and the duties of the office of chief engineer were substantially the same as those of superintendent of maintenance, the relator's position is well taken." *State* v. *City of Seattle,* 115 Wash. 548, 197 Pac. 782, 783.

" . . . The nature of the work done, and not the name given the position, is the controlling feature, and determines the rights of eligibles under civil service. . . . " *Allard* v. *City of Tacoma,* 176 Wash. 441, 29 Pac. (2d) 698, 699.

" . . . Unsubstantial and merely colorable changes in the classification of positions are not a sufficient foundation to warrant the ousting of one employee and the appointment of another person to perform substantially the same duties. . . . " *Winslow* v. *Bull*, 97 Cal. App. 516, 275 Pac. 974, 976.

10 American Jurisprudence 933, section 12, states the rule as follows:

"Civil service laws do not guarantee to officers or employees the tenure of positions which are no longer required. A civil service position may be abolished in good faith, as, for example, where there is no longer a public necessity for its continuance or where its abolition is advisable for purposes of economy. Nevertheless, good faith in such cases is essential. The civil service laws cannot be evaded by a sham or pretended abolition, as where the incumbent of an office is ousted, a colorable change made in the title of the office, and another person appointed to perform substantially the same duties."

Under the facts, it was the clear duty of the Civil Service Board to allocate the position of general park foreman to the plaintiff and of the Park Board to retain him in such service. The judgment directing the said city and its agencies to perform such duty and to pay plaintiff the salary attached to the position, less the amount he had received during the time of his ouster therefrom, should be affirmed, and it is so ordered.

LOCKWOOD, C. J., and McALISTER, J., concur.