[Civil No. 4385. Filed June 2, 1941.]

[113 Pac. (2d) 860.]

G. B. DONALDSON, Petitioner, v. DEAN A. SISK, ROBERT D. KENDALL and JOHN M. SAKRISON, as Members of and Constituting the UNEMPLOYMENT COMPENSATION COMMISSION of Arizona and ANA FROHMILLER, as Auditor of the State of Arizona, Respondents.

Mr. Henry H. Miller and Mr. Charles N. Walters, for Petitioner.

Mr. Arthur M. Davis, Mr. D. Kelly Turner and Mr. Richard Minne, for Respondent Commission.

Ana Frohmiller, State Auditor, in *propria persona*.

LOCKWOOD, C. J.—This is an original petition for *mandamus* by G. B. Donaldson, petitioner, against Dean A. Sisk, Robert D. Kendall and John M. Sakrison, as members of the Unemployment Compensation Commission of Arizona, called the commission, and Ana Frohmiller as state auditor.

The allegations of the petition, stated in narrative form, are, in substance, as follows: In 1936 the legislature adopted chapter 13 of the First Special Session laws of that year, commonly referred to as the unemployment compensation law, Code 1939, § 56–1001 et seq. It has since been amended but the amendments are not material to the present case. This law was passed subsequent to the Wagner-Peyser Act, 29 U. S. C. A., § 49 et seq., and the Federal Social Security Act, 42 U. S. C. A., § 301 et seq., adopted by the federal government in June, 1933, and February, 1935, respectively. In order to conform to the federal laws above referred to, the Arizona law accepted certain provisions of the federal acts, and is receiving federal aid thereunder. Among other things these federal rules require a single administrative head for the approval of personnel action, travel, authorization purchases, procurements and expenditures under the compensation law, and also require a personnel merit system to be adopted and conformed to by the states. Section

56–1011, Arizona Code, 1939, therefore provides in subdivision (d) as follows:

"Personnel. Subject to other provisions of this act, the commission is authorized to appoint, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. All positions shall be filled by persons selected and appointed on a non-partisan merit basis. . . . "

Pursuant to this section the commission adopted a merit system and a classification plan conforming thereto, setting forth the various positions created thereby and the method of appointment and removal of its officers and employees. The functions of the commission were divided by the statute into two parts, the unemployment compensation division and the employment service division. These two divisions were required to be separate administrative units except so far as the commission found the separation impracticable. Section 56–1010, Arizona Code, 1939. Among other things the classification plan provided for the position of an executive director, stating that this director might also be the acting director of the unemployment compensation division of the commission. In accordance with the rules established by the commission, as aforesaid, petitioner took the merit system examination for the position of executive director, and as a result thereof he was appointed to such position probationally on May 9, 1939, and permanently on November 9, 1939, and entered upon the duties of executive director and *ex-officio* director of the unemployment compensation division and performed them continuously in accordance with the rules of the merit system until January 13, 1941, and is still ready, able and willing to carry out the functions of such position.

It is then alleged that on January 13, and immediately after their appointment as members of the com-

mission, the commissioners aforesaid attempted to abolish the position of executive director, and to delegate the duties thereof as fixed by the regulations of the commission to another position designated as administrative officer, and, contrary to the rules and regulations of the merit system, attempted to combine the duties of director of the employment service division and director of the unemployment compensation division, which was only a subterfuge for the purpose of enabling the commission to substitute one employee for another, and that the effect of such conduct was to remove petitioner from his position. As a result of these actions the commission claims that petitioner no longer holds any employment under it, has refused to approve his salary claims as executive director, and the auditor has failed to pay them. The prayer of the petition is (a) that the commissioners be compelled to reinstate petitioner as executive director and acting director of the unemployment compensation division, (b) that they be required to prepare and approve claims for petitioner's salary from February 28, 1941, (c) that their acts in attempting to discharge him be declared null and void, and (d) that the auditor be compelled to issue warrants for his salary since said February 28.

The commission answered with a motion to strike, a demurrer, a plea in bar and an answer. The auditor answered with a demurrer.

We consider first the demurrer of the auditor. It appears from the petition that the only complaint against her is that she has not approved claims for petitioner's salary since February 28, but it also appears that no claims for such salary approved by the head of the department, to-wit, the commission, have ever been presented to her for payment. It cannot, therefore, be said that she is derelict in any of her

duties, for the presentation of such approved claims is essential before she would be permitted by law to approve them under any circumstances. *State* v. *Angle,* 56 Ariz. 46, 104 Pac. (2d) 172. If the court grants the relief prayed for as against the commissioners it will then be necessary for petitioner to present his salary claims to the auditor. It is presumed that every public officer does his duty, and we are satisfied that the auditor, when a proper legal salary claim is presented to her, will follow the rules laid down by this court as to the law and do her duty in regard thereto. We think, therefore, her demurrer should be sustained.

We consider next the demurrer of the commissioners. It is urged in support thereof that petitioner has not alleged that he has done all things necessary to the regulations of the commission in regard to the method of an appeal from a dismissal, suspension or demotion under its merit system. These regulations require appeals from such action by the commission be made in a certain manner, and the petition does not allege this was done. If this were the ordinary "dismissal, suspension or demotion" provided for by the regulations, the point might be well taken, but it is not. It is an attempted abolition of the position held by petitioner which, if valid, removes him by reason thereof. We think this is not the character of "dismissal, suspension or demotion" referred to in the regulations of the commission, and that petitioner was under no duty to present his grievance to the merit system council in the manner provided by the regulations. The demurrer of the commission is overruled.

We next consider the motions to strike. These motions refer to various allegations in regard to the connection between the federal statutes and the Arizona law, and it is claimed that the allegations of the complaint in regard thereto are merely conclusions

of law and not statements of fact. This requires a
consideration of the legal effect upon this question of
the alleged relations between the federal and the state
law. Generally speaking, these allegations are that
the federal law had certain provisions which it was
necessary for the state law to comply with in order to
secure federal aid. The state law depends for its
validity and effect, so far as its employees and their
compensation is concerned, solely upon the act of the
Arizona legislature. The federal statutes referred to
merely state, in substance, that if Arizona wishes to
secure federal aid for the projects involved under its
compensation law, it must do certain things. If it does
not do these things, the failure does not affect the
validity or interpretation of its laws but merely causes
the federal government to cease any contribution to its
operations. The question before us, therefore, is not
what the federal government requires as a condition to
its contribution, but what the Arizona law provides.
It was not required, and could not be compelled, to
adopt any of the provisions asked by the federal gov-
ernment, and the only effect of its refusal to do so was
to cause the state to lose certain federal assistance.
If, however, it did for any reason whatever adopt any
part of the federal laws, rules and regulations, they
are binding upon it, not because of the act of Congress,
but because of the act of our own legislature. Any
allegations that the Arizona law has adopted certain
provisions of the federal law are relevant and perti-
nent; any allegations that the federal law has certain
provisions which it requires the Arizona law to adopt
as a condition precedent to the receiving of contribu-
tions from the federal government are irrelevant.
We think the portion of paragraph III, reading as fol-
lows, " . . . and thus the State of Arizona has become
entitled to, and is receiving Federal aid, benefits, and

allowances under the provisions of such Acts.''; all of paragraph IV, and that portion of paragraph VII reading, ''the Federal Law and'' should be stricken, and that the remainder of the motion to strike should be denied.

We come then to the plea in bar and answer. The plea in bar merely raises the same question as the demurrer, and for the same reason is overruled. The answer then sets up, in substance as follows: The commission did adopt a merit system and formulate a classification plan thereunder, in conformity with the provisions of the Arizona law that ''all positions shall be filled by persons selected and appointed on a nonpartisan merit basis,'' and such classification plan provided for the position of executive director, and petitioner was appointed to such position by virtue of and under the provisions of the merit system adopted by the commission, but it denies that there was any position established by such system as ''director of unemployment compensation division,'' and alleges that the commission merely designated the executive director as acting director of such division. It then alleges that on January 13, 1941, the merit system classification was amended by the commission in adopting a resolution which reads, so far as material, as follows:

''WHEREAS, this commission does not feel that an executive director is provided for by our law, nor that such position is necessary or essential to the operation of the agency, . . . and

''WHEREAS, this commission is of the opinion that the intent of the Arizona Legislature as expressed in the law which it passed, will be best served by carrying out the provisions of the Unemployment Compensation Law of 1936 by administering it through directors of the two divisions created under the Act, and

''NOW THEREFORE BE IT RESOLVED, that the resolution of the recent Arizona Unemployment Compensation Commission dated October 13, 1939,

and the resolution of the previous commission dated July 7, 1938, creating the position of executive director and prescribing his duties, are hereby rescinded, cancelled and declared null and void, effective immediately, and

"BE IT FURTHER RESOLVED, that the present incumbent in the position of executive director is relieved of his duties at the close of business of the day upon which this resolution is adopted, and that he shall continue to receive his salary for the period for which he is entitled to accrued annual leave as provided in the commission's merit system regulations."

After the adoption of such resolution the commission assigned all of the duties formerly attached to the position of executive director to certain other positions which had formerly been established under the classification plan, and the duties of executive director have since January 13 been discharged by the individuals who were incumbents of these other positions. The answer does not specifically allege it to be a fact, but the only logical inference thereof is that the abolition of the position was not an attempt to evade the merit system resolution by subterfuge but a *bona fide* effort to reduce the administrative costs of the commission by assigning the work formerly done by the executive director to various other officers who from time to time performed those duties in addition to their own.

If, as contended by the commission, and as would reasonably appear if there was nothing else before us, the resolution above set forth, which abolishes the position of executive director, was a *bona fide* attempt to reduce the expenses or improve the efficiency of the commission, we think this would not be a violation of the merit system. *City of Phoenix et al.* v. *Powers, ante,* p. 262, 113 Pac. (2d) 353. No person has a vested right to any public office or position except as provided by law, and if a competent authority abolishes the position for a legitimate reason, the holder

thereof has no remedy because he has necessarily lost the position and the salary which goes with it. But the question in this case is as to the *bona fides* of the acts of the commission.

It is the claim of petitioner that the abolition of the position was merely an attempt to do by juggling the rules of the commission what it could not do directly, to-wit, remove him. In support of this contention he has submitted to us certain other resolutions adopted by the commission at the same time as the one of January 13 above set forth, and others of later dates as proof of the correctness of his claim. The resolutions are lengthy and for that reason we merely summarize their effect.

The activities of the commission were by statute divided into two classes, the unemployment division and the compensation division. On January 12 there were two fully paid positions, that of executive director and *ex-officio* director of the compensation division held by petitioner, and the director of the unemployment division. Together these two positions carried certain functions and duties. After the resolutions of January 13 there were still two paid positions, the unemployment director who was now also, in substance though not in name, executive director, and a new officer known as the administrative assistant, whose principal duty was to manage the compensation division. There was also what is known as a service section established, the duties of which were mainly to coordinate the activities of the two divisions, but it was left to future action as to who should head that section. On March 29 the setup was again changed, as a result of which the unemployment director was restored to his original position and duties, and the chairman of the commission was, in effect, made head of the service section. The positions of administrative assistant and chief accountant were abolished and

a new position created, that of director of the compensation division, the former chief accountant being given temporary charge of the unemployment division until a permanent director was selected. On April 27 there was another change, the position of chief accountant being reestablished.

The ultimate result of all these actions was that there were thereafter two full salaried officers, and one additional (the chairman of the commission) who received no compensation for the duties thus imposed upon him, to perform the duties which were previously performed by petitioner and one other salaried officer. The practical effect, so far as the record shows, was not to cause any increased economy or efficiency in the operation of the department, but merely to remove petitioner from his position and replace him by another salaried employee.

 Ordinarily when a question of fact is involved in a *mandamus* proceeding in this court, we remand it to the superior court to take evidence and determine the facts. In this case, however, the actual facts are before us and the only question is the inference to be drawn therefrom. In such circumstances we are as well qualified to draw it as is the lower court, and we think it is our duty to do so. After a consideration of all the provisions of the act, the regulations of the merit system established thereunder, and the circumstances as shown by the record in this case, we are compelled to conclude that the abolition of the position of executive director made on January 13, 1941, was not a *bona fide* attempt on the part of the commission to lessen the cost or increase the efficiency of its operation, but was rather an effort to remove petitioner from his position without following the procedure set forth by the rules and regulations of the merit system established by the commission. If petitioner

was not qualified to perform the duties pertaining to the position which he held there was an ample and proper method existing for separating him therefrom.

It was undoubtedly the intent of the legislature that the unemployment compensation commission in all its dealings with personnel should act under a properly organized merit system. We have defined the essentials of such a system in the case of *Welch* v. *State Board*, 53 Ariz. 167, 87 Pac. (2d) 109, 112, in which we said:

" . . . It is clear to us therefrom that it was the intention of the legislature to provide for a very comprehensive merit system of appointment and discharge of all employees in the social security department of the state, which of course includes the county boards, with the exception of such officers or employees as were specially exempted from such system. In so doing, they were directed to provide not only for a fair and impartial selection and appointment of all personnel on the basis of open and competitive merit examinations, but they were also required to provide for a fair and impartial system of separation from service, through resignation, retirement or removal. One was as important and essential as the other. No employee could be appointed who did not comply with the regulations for competitive examinations set up by the board, and we think it was equally intended that no one should be removed except in pursuance of a fair and impartial system of separation from service. Such a system, in our opinion, must necessarily include (a) specific reasons for removal, and (b) a reasonable hearing before some designated and proper authority as to whether the party whose removal was sought fell within the reasons for removal set forth in the regulations established by the board."

In *Taylor* v. *McSwain*, 54 Ariz. 295, 95 Pac. (2d) 415, 421, we used the following language:

" . . . The phrase 'non-partisan merit basis' has, therefore, acquired a distinct and well known meaning. Its essentials are, in substance, that the appointment

of all employees who come under the system should be made on the basis, and as the result, of open and competitive examinations arranged to determine which of the applicants for the position is best fitted to perform its duties, regardless of political affiliations or past record, and that once an appointment is made, removal from the position should be based only on unfitness for the work for one reason or another, and not upon personal considerations. It necessarily follows that any system which conforms to these principles, no matter what its details may be, is a nonpartisan merit system, and one which does not so conform, is not a system coming within the definition. . . . ''

It is true that in the case of *Stapleton* v. *Frohmiller,* 53 Ariz. 11, 85 Pac. (2d) 49, 52, we discussed the question of whether the position of executive director created by the commission was an ''office'' or merely an ''employment,'' and said:

'' . . . His duties were prescribed solely by a resolution of the commission, and were subject to change by it at any time. If the commission decided that the sole duty of the executive director was to mow the lawn in front of its office for a compensation of one dollar per year, it had the authority to so declare, and his only remedy, if he objected, would be to resign. . . . ''

In that case there was no question involved as to the existence of a merit system or the effect of such a system upon the rights of the personnel thereunder. If there were no merit system existing in Arizona there can be no doubt but that in the present case petitioner could not question the manner in which his removal from office was effected, and the language above quoted applied to such a situation. But the very purpose and effect of the merit system is to take from the appointing officer the right of arbitrary removal, either directly or indirectly, of an appointee, which he would otherwise have. The representatives of the people have definitely stated that the unemployment compensation commission is to be governed, so far as

personnel is concerned, by a merit system, and we have defined the essentials thereof in the two cases quoted from. Unless this system is enforced in its spirit as well as its letter, the laudable desire of the legislature to make appointment and tenure in public service based solely on merit will be defeated.

We think, therefore, it is our duty in any case of this nature which comes before us to look through the form to the substance of any act of the commission in determining whether the law has been complied with or not. We are of the opinion that in the present case it was not.

The alternative writ of *mandamus* against the members of the commission, heretofore issued, is made peremptory.

McALISTER and ROSS, JJ., concur.