[Civil No. 4471. Filed December 29, 1941.]

[120 Pac. (2d) 404.]

LEWIS IRVINE, Petitioner, v. ANA FROHMILLER, as Auditor of the State of Arizona, Respondent.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe, and Mr. Harold E. Whitney, for Petitioner.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Respondent.

LOCKWOOD, C. J.—Lewis Irvine, petitioner, applied to this court for a writ of *mandamus* against Ana Frohmiller as auditor of the State of Arizona, respondent, directing her to issue warrants in payment of certain claims of his against the state. The facts upon which the petition is based are not in controversy and may be stated as follows:

In 1936 the legislature adopted what is officially referred to as the Unemployment Compensation Law, and which we shall hereinafter call the Act. Our reference in this opinion to sections of the Act is to the code of 1939, unless otherwise specified. The purpose of the Act, as declared in the preamble, is to provide stable employment, and payments for persons unem-

ployed through no fault of their own. Certain sections contain the following language:

"56–1010. *Unemployment Compensation Commission.*—(a) Organization. There is hereby created a commission of three (3) members to be known as the Unemployment Compensation Commission of Arizona. The members of the commission shall be appointed by the governor and shall hold office co-terminus with the term of the governor. . . .

"(c) Divisions. The commission shall establish and supervise the conduct of two (2) coordinate divisions: The Arizona State Employment Service Division created pursuant to section 12 (§ 56–1012) of this act, and the Unemployment Compensation Division. Each division shall be responsible for the discharge of its distinctive functions. Each division shall be a separate administrative unit with respect to personnel, budget, and duties, except in so far as the commission may find that such separation is impracticable. The commission is authorized to appoint, fix the compensation of, and prescribe the duties of the director of the Unemployment Compensation Division, provided that such appointment shall be made on a non-partisan merit basis, in accordance with the provisions of this act relating to personnel."

"56–1011. *Administration.*—(a) Duties and powers of commission. It shall be the duty of the commission to administer this act; and it shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as it deems necessary or suitable to that end. . . .

"(d) Personnel. Subject to other provisions of this act, the commission is authorized to appoint, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. All positions shall be filled by persons selected and appointed on a non-partisan merit basis. The commission may delegate to any such person so appointed such power and authority as it deems rea-

sonable and proper for the effective administration of this act, and may in its discretion bond any person handling moneys or signing checks hereunder."

"56–1012. *Employment service.*—(a) Establishment and Functions. The commission shall create a division to be known as the Arizona State Employment Service which shall establish and maintain free public employment offices in such number and in such places as may be necessary for the proper administration of this act and for the purpose of performing such duties as are within the purview of the act of Congress entitled 'an act to provide for the establishment of a national employment system and for cooperation with the states in the promotion of such system, and for other purposes,' approved June 6, 1933, (48 Stat. 113, U. S. Code, title 29, section 49 (c) as amended). The said division shall be administered by a full-time salaried director, who shall be charged with the duty to cooperate with any official or agency of the United States having powers or duties under the provisions of the said act of Congress, as amended, and to do and perform all things necessary to secure to this state the benefits of the said act of Congress as amended, in the promotion and maintenance of a system of public employment offices. The provisions of the said act of Congress, as amended, are hereby accepted by this state, in conformity with section 4 (§ 56–1004) of said act, and this state will observe and comply with the requirements thereof. The state employment service division is hereby designated and constituted the agency of this state for the purpose of said act. The existing free public employment offices established pursuant to chapter 55 of the laws of the Twelfth Session of the Legislature of the state of Arizona, 1935 Session (§§ 56–601—56–604), shall be transferred to the jurisdiction of the employment service division of the commission upon this act becoming effective and all records, files and property, including office equipment, of such offices shall likewise be transferred to such division, and the unexpended balance of any appropriation made for such offices is hereby made available to the commission for the purpose of maintaining said state em-

ployment divisions. Upon such transfer all duties and powers of the board of directors of state institutions, or the employment service division thereof, relating to the establishment, maintenance and operation of free public employment offices shall be vested in the employment service division of the commission. The commission is directed to appoint the director, other officers, and employees of the Arizona state employment service. Such appointments shall be made in accordance with regulations prescribed by the director of the United States employment service."

"56-1013. *Unemployment compensation administration fund.*— . . .

"(b) Employment service account. A special 'employment service account' shall be maintained as a part of the unemployment compensation administration fund for the purpose of maintaining the public employment offices established pursuant to section 12 (§ 56-1012) of this act and for the purpose of cooperating with the United States Employment Service. There is hereby transferred to the employment service account of the unemployment compensation administration fund the unexpended balance to the credit of the Arizona Employment Service and consisting of funds appropriated under chapter 55, Session Laws Twelfth Legislature of Arizona 1935 (§§ 56-601—56-604), for the fiscal year ending June 30, 1937, and funds received by this state from the United States government for the purpose of establishing free employment offices. In addition, there shall be paid into such account the moneys designated in section 12 (b) (§ 56-1012, subd. (b)) of this act, and such moneys as are apportioned for the purposes of this account from any moneys received by this state under title III of the Social Security Act, as amended."

The commission prepared rules and regulations setting up various positions which it thought necessary for the discharge of its duty, among them being one characterized as the "executive officer" of the commission. All of these positions, including the directors of the Arizona state employment service and the

unemployment compensation division referred to in the Act, were placed under a merit system providing for their appointment to, and separation from, the service. On November 12, 1937, petitioner was appointed as "director Arizona state employment service" and he immediately entered upon the duties of such position, and ever since has been such duly appointed, acting and qualified director.

In 1941 the legislature amended the Act by chapters 27 and 124 of the regular session laws of that year, the former being approved March 10, and the latter March 27. Neither of these chapters carried the emergency clause and both, therefore, became effective ninety days after the adjournment of the legislature. But since chapter 124 was the last approved by the governor, we think that all conflicts between the two must be resolved in favor of the last indicated will of the legislative authority. Section 56–1010, *supra,* was amended by chapter 124, § 10, to read, so far as material, as follows:

"*Employment Security Commission.* (a) Organization. There is hereby created a commission of three members to be known as the Employment Security Commission of Arizona. . . .

"(c) Divisions. The commission shall establish and supervise the conduct of two coordinate divisions: the Arizona State Employment Service Division created pursuant to section 56–1012, Arizona Code of 1939, and the Unemployment Compensation Division. Each division shall be responsible for the discharge of its distinctive functions. Each division shall be a separate administrative unit with respect to personnel, budget, and duties, except in so far as the commission may find that such separation is impracticable. The commission is authorized to appoint, fix the compensation of, and prescribe the duties of the director of the Unemployment Compensation Division, provided that such appointment shall be made on a non-partisan merit basis, in accordance with the

provisions of this act relating to personnel. The director of the Arizona State Employment Service Division created pursuant to section 56–1012, Arizona Code of 1939, may, in addition to his other duties, be appointed director of the Unemployment Compensation Division and shall be the executive official of the commission."

The funds necessary for carrying out the provisions of the Act were derived from several sources, among them being direct appropriations by the state and funds received by the state from the United States government, in accordance with provisions of the act of Congress referred to in section 56–1012, *supra*, commonly called the Wagner-Peyser National Employment System Act, 29 U. S. C. A., § 49 et seq. Under that act the federal government made certain regulations as to the conditions under which funds would be contributed for the support of the state employment service. One of these conditions was that its director must be a full-time officer, devoting all of his time to the duties of that office alone.

The legislative appropriation for the state employment service in the general appropriation bill of 1939, is subdivision 53 thereof, Laws 1939, chap. 88, § 1, which reads as follows:

"Arizona State Employment Service.

| | For the 28th Fiscal Year | For the 29th Fiscal Year |
|---|---|---|
| "For salaries and wages; ror operation; for travel; for captial investment; for repairs and replacements: | $12,500.00 | $12,500.00 |
| | $25,000.00 | |

"This appropriation is made subject to the condition that, at least, a like amount be allotted to this state by the federal government under the Wagner-Peyser act and expended concurrently with this appropriation."

and an allotment was duly made by the federal government equivalent to the appropriation for the two fiscal years ending June 30, 1941.

The legislature, in 1941, by subdivision 14 of the general appropriation bill, Laws 1941, chap. 122, § 1, also made an appropriation for the state employment service for the ensuing two fiscal years, identical in amount, and with the same limiting conditions as the appropriation of 1939. It will be seen that the expenditure of this appropriation in both instances was conditioned upon the allotment of a similar amount by the federal government and the expenditures were to be concurrent. Under chapter 124, *supra,* it became mandatory upon the commission to appoint the director of the employment service as its executive officer as soon as the chapter became law.

At the end of the fiscal year of June 30, 1941, there remained on hand in the fund allotted for that year $25 from the state appropriation and $543.33 of the amount granted by the federal government. But this federal allotment, so far as it refers to any expenses incurred after June 15, 1941, was withdrawn by the federal government, on the ground that it had been made originally on the assurance of the Employment Security Commission that the provision requiring that the director of the Arizona state employment service division must be the executive officer of the commission was permissive only and would not be followed by the commission, and that such assurance could not be carried out after chapter 124, *supra,* became effective. The federal authorities also refused to make any allotment for the expenses of the state employment service after June 30, 1941, for the same reason, and since the state appropriation for that period was conditional upon the allotment from the federal government, it was evident that there would

be no funds available in the treasury for the purpose of maintaining the service. The commission, therefore, passed the following resolution, which was communicated to petitioner and the other employees of the employment service division.

"*Whereas,* the Federal Social Security Board, which provides all of the funds for the operation of the Employment Service Division of this Commission has withdrawn the same and has advised this commission that it will not provide further funds for such purpose until the Employment Security Act of Arizona has been amended, and

"*Whereas,* the functions previously performed by said Employment Service Division will hereafter be discharged by the Social Security Board, United States Employment Service, in the State of Arizona, and

"*Whereas,* the activities of said Social Security Board, United States Employment Service, will be made available to this Commission in lieu of the services of a similar nature heretofore performed by the Employment Service Division of this Commission,

"*Now, therefore, be it resolved,* that all operations and activities of the Arizona State Employment Service Division of the Employment Security Commission of Arizona, be, and the same are hereby suspended in all respects from 9:00 o'clock A. M. July 21, 1941, until further order of this Commission, and

"*Be it further resolved,* that all personnel of said Division be granted annual leave, effective 9:00 o'clock A. M. July 21, 1941, and that upon the expiration of the accrued annual leave, of each respective individual, he be granted leave of absence without pay for a period of six months immediately following the expiration of such accrued annual leave, or until the activities of the Arizona State Employment Service Division of the Commission are resumed, whichever date it the earlier."

The annual leave referred to in the order was taken by petitioner and he was paid his salary therefor.

The claims presented by him were for salary and travel expenses accruing after the resolution above referred to was adopted and communicated to petitioner. They were approved by him as the director of the Arizona state employment service and presented to respondent, rejected twice by her, and then, after her notification to the governor of her rejection, again rejected by the latter, whereupon this action was brought.

The first objection raised by respondent to the issuance of the writ is that the claims were not first approved by the head of the department under which the services were alleged to have been rendered; that we have held in *Hutchins* v. *Frohmiller,* 55 Ariz. 522, 103 Pac. (2d) 956; *State* v. *Angle,* 56 Ariz. 46, 104 Pac. (2d) 172; and *State* v. *Miser,* 50 Ariz. 244, 72 Pac. (2d) 408, that such approval is a necessary condition precedent to the auditor's approval, and that if such approval has not been made the remedy of the claimant is *mandamus* against such head of the department. This is undoubtedly the law in Arizona. The question then is, was petitioner the proper person to approve claims of this kind?

The commission is the administrator of the Act and it has the power to make any rules or regulations which it considers necessary for the administration thereof. It may, if it desires, delegate to any person so much of its power and authority as it deems reasonable. Section 56–1011, *supra.* We think, therefore, that the department to which petitioner belongs has as its head the commission, and he is merely a subordinate officer with a position established, it is true, by the Act itself, but with only such authority, so far as approval of claims against the State of Arizona at least is concerned, as is delegated to him by the commission. It is not alleged that peti-

tioner was ever given the authority to approve claims of this nature, and in the absence of such allegation, we must assume he did not have the power. *Donaldson v. Sisk,* 57 Ariz. 318, 113 Pac. (2d) 860. But assuming for the sake of the argument that such power was given to him, was he then entitled to have warrants for the claims issued by the auditor? Respondent contends that he is not for two reasons, (a) that under the resolution above set forth the compensation theretofore provided for the office of petitioner was suspended for six months and the duties were also suspended, and (b) that even if he were not, there are no funds on hand to pay his claims.

The position of director of the State Employment Service is established by the legislature and, of course, cannot be abolished by the commission, and we think since the enactment of chapter 124, *supra,* the same rule applies to the position of executive officer. *Stapleton* v. *Frohmiller,* 53 Ariz. 11, 85 Pac. (2d) 49. It may, though, fix the compensation of the director and appoint and remove him and prescribe his duties, except as they are fixed by statute, provided that such action is in conformity with the merit system established by the commission, both as to manner and substance. *Donaldson* v. *Sisk, supra; Stapleton* v. *Frohmiller, supra.* The resolution did not attempt to abolish the position or change its duties, but suspended its activities and granted its officers and employees leave of absence without pay. This, in effect, was a temporary change in the compensation attached to the office. May this be done?

We have said in *City of Phoenix v. Powers,* 57 Ariz. 262, 113 Pac. (2d) 353, 355:

"The plaintiff admits the right and the duty of the city to keep down the expenses of the park department and to operate within the budget. He also ad-

mits that to that end the city has power to consolidate or abolish positions, to reduce salaries and to lay off employees. However, in doing any of these things, the city's action must be in accordance with the Civil Service Rules. It must recognize seniority. If the only change in the classified position is its name, the legal occupant thereof cannot be separated from it and an employee of junior right or no right given the position. Nor can such tactics be employed merely to get rid of an eligible employee. . . .

"10 American Jurisprudence 933, section 12, states the rule as follows: 'Civil service laws do not guarantee to officers or employees the tenure of positions which are no longer required. A civil service position may be abolished in good faith, as, for example, where there is no longer a public necessity for its continuance or where its abolition is advisable for purposes of economy. Nevertheless, good faith in such cases is essential. The civil service laws cannot be evaded by a sham or pretended abolition, as where the incumbent of an office is ousted, a colorable change made in the title of the office, and another person appointed to perform substantially the same duties.' "

And in *Donaldson* v. *Sisk, supra,* [113 Pac. (2d) 864], we said:

"If, as contended by the commission, and as would reasonably appear if there was nothing else before us, the resolution above set forth, which abolishes the position of executive director, was a *bona fide* attempt to reduce the expenses or improve the efficiency of the commission, we think this would not be a violation of the merit system. [Citing case]. No person has a vested right to any public office or position except as provided by law, and if a competent authority abolishes the position for a legitimate reason, the holder thereof has no remedy because he has necessarily lost the position and the salary which goes with it. But the question in this case is as to the *bona fides* of the acts of the commission."

It is obvious from the facts appearing in the record that the resolution was not an attempt of the

commission to take away any rights of position, salary or duties possessed by petitioner and to bestow them on another, but was a *bona fide* attempt to prevent the possible accumulation of obligations against the state which the commission, for the reasons set forth, was not in a position to meet as a matter of law. Since it could reduce the salary of petitioner as it saw fit, we see no reason why it could not suspend it under the circumstances. We think the resolution was not only legally permissible but commendable, and that any other course would have been a failure to exercise sound discretion. If, as and when the commission is able to resume the work of the State Employment Service, which it cannot now carry on for lack of funds, petitioner will doubtless be recalled and his leave of absence without pay terminated. Until that time he cannot claim any compensation for salary or expenses incurred during the leave of absence.

It is contended that there was still a small balance left over from the previous year, sufficient to pay the claims presented. Almost all of this was money apportioned by the federal government under a mistaken representation of law and fact, and the apportionment was withdrawn after the mistake appeared. These moneys apportioned to the state by the federal government are a trust fund which can be used only for the purpose and in the manner approved by it. Section 56–1012, subdiv. (b). We think that even though the legal title to the money is in the state, it would be a breach of trust, under the circumstances, to apply it in payment of the claims in question.

The alternative writ heretofore issued is quashed.

McALISTER and ROSS, JJ., concur.