685 P.2d 1301

**Forrest FLEMING, Plaintiff/Appellee,**

v.

**PIMA COUNTY, Arizona; Pima County Board of Supervisors, E.S. "Bud" Walker, Katie Dusenberry, Conrad Joyner, Sam Lena and David Yetman; Sandy Bowling, an employee of Pima County, Defendants/Appellants.**

No. 17192–PR.

Supreme Court of Arizona, En Banc.

June 18, 1984.

Reconsideration Denied July 17, 1984.

Watt & Cohen by Melvin C. Cohen, Tucson, for plaintiff/appellee.

Jones, Dickerman, Nuckolls, Edwards & Smith by John Gabroy, Tucson, for defendants/appellants.

FELDMAN, Justice.

On July 1, 1977 Pima County discharged Forrest Fleming (plaintiff) from employment as an automotive service supervisor. Fleming first sought administrative review of his discharge; dismissal of those proceedings was judicially approved.[1] He also brought the case at bench seeking reinstatement to his position and damages for wrongful discharge. The trial court made a specific finding that the discharge had been made as "a pretext to avoid the merit system" and ordered relief, including reinstatement, back pay, prejudgment interest and attorney's fees. The court of appeals held the evidence sufficient to support the trial court's conclusion that the discharge was improper and affirmed the portion of the trial court's order which provided for reinstatement to employment and award of attorney's fees, but vacated that portion of the order which had awarded damages consisting of the wages which plaintiff had lost between the date he was improperly discharged and the date he was reinstated. *Fleming v. Pima County*, 141 Ariz. 167, 685 P.2d 1319 (1983). The county petitioned for review and plaintiff cross-petitioned for review of the reversal of the damage award. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ. App.P., Rule 23.

We accepted review because of the conflicting public policy issues involved. We hold that the court of appeals erred in reversing the damage award and affirm the judgment entered by the trial court. A complete recital of the facts is contained in the opinion of the court of appeals; we include only those facts necessary for an understanding of the legal issues we decide.

## FACTS

On June 17, 1977 the county notified plaintiff that his employment would be terminated effective July 1.[2] Plaintiff commenced grievance procedures under the

---

1. *Fleming v. Pima County*, 125 Ariz. 523, 611 P.2d 110 (App.1980) (*Fleming I*).

2. The trial court found that the reason given for the dismissal was untrue and that it was a pretext devised by plaintiff's immediate superior for the purpose of discharging plaintiff in violation of the merit system rules. The court of appeals noted, correctly, that there is ample evidence in the record to support that finding.

Pima County merit system rules and requested a hearing, claiming that no cause existed for termination of his employment. His administrative appeal was dismissed by the merit system commission. Plaintiff pursued the matter by appeal to the courts. The court of appeals determined that "the question of an improper layoff [was] outside the province" of the commission's review. *Fleming I*, 125 Ariz. at 524, 611 P.2d at 111. The court held that a claim of bad faith discharge raises "issues outside the merit system," but noted that the plaintiff

> is not left without a remedy, see *Donaldson v. Sisk*, [57 Ariz. 318, 113 P.2d 860 (1941)], and the record suggests that he has sought alternative relief.

*Id.*

Indeed, plaintiff had sought alternative relief by filing the action which is the subject of the present review. The complaint in that action sought reinstatement and recovery of damages for wrongful discharge under both tort and contract theories. Plaintiff remained out of work while the action was pending until he found other employment on April 19, 1980.[3] On May 6, 1980, this court denied review in *Fleming I*. Within six months thereafter on August 26, 1980, plaintiff presented a claim by letter complying with A.R.S. § 11–622 to the Pima County Board of Supervisors. The claim sought recovery of lost wages and employment benefits resulting from plaintiff's allegedly illegal discharge. The claim was evidently denied[4] and the pending action proceeded to trial and judgment in plaintiff's favor.

On appeal, defendant argued that plaintiff's claim for lost wages was barred by failure to timely file the administrative claim required by A.R.S. § 11–622. The statute provides:

> A person having a claim against a county shall, within six months *after the last item of the account accrues,* present to the Board of Supervisors ... a written itemized claim .... The Board shall not consider a claim unless the demand therefor is presented within such time.

(Emphasis supplied.)

The court of appeals agreed with the county, holding that the statute had required plaintiff to file the claim within six months "after the payment for the last labor ... becomes due" and concluded that the date for filing was six months after discharge. The court held, therefore, that plaintiff's filing was untimely and vacated that portion of the trial court's order which awarded back pay on the ground that the award was barred by the failure to comply with the claim statute. The portion of the trial court's order which provided for reinstatement and payment of attorney's fees was affirmed. 141 Ariz. at 170, 685 P.2d at 1322.

### THE CONTRACT CLAIM

■ Plaintiff argues that his filing of a claim for back pay with the county on August 26, 1980 was timely and complied with A.R.S. § 11–622. Plaintiff contends that August 26th was within six months of the time "after the last item of the account accrues." We agree. If the account is deemed to "accrue" at the time of discharge, plaintiff would have been required to file a claim at least every six months even though the contract had not been completed and even though plaintiff had affirmed it and sought to enforce performance through the grievance procedure. The items of damage (lost wages) were still accruing and the mitigating factors (earnings from other, sporadic employment) were still accumulating so that the total amount of the claim could not be determined. Further, pending completion of the grievance procedure, plaintiff had no way of knowing just what type of claim to file. The filing of the claim would have been a

---

3. Plaintiff was hired by Pima County to work in the CETA Program. This did not constitute reinstatement to his job with the county; it was an entirely different job and left plaintiff in the same position as if he had found work with a different employer.

4. The record does not indicate what action was taken by the Board of Supervisors.

useless act because the county was aware of plaintiff's position by reason of the matters asserted in the grievance procedure and the attendant appeal to the superior court and the court of appeals. So long as the board continued to oppose plaintiff's grievance complaint and his administrative appeal, it was required to reject each claim filed. *See Holdren v. Peterson*, 52 Ariz. 429, 436, 82 P.2d 1095, 1098 (1938); *Maricopa County v. Biaett*, 21 Ariz.App. 286, 289, 518 P.2d 1003, 1006 (1974). Plaintiff would then have been required to sue on each claim pursuant to A.R.S. § 11–630 (requiring action on a rejected claim within six months after action of the Board of Supervisors). This would have resulted in four or five separate lawsuits, each of which would have required litigation of precisely the same issues as were already before the superior court in the appeal from the grievance procedure. In our view such an elevation of form over substance would serve no useful purpose and should not be adopted unless required by the clear words of the statute or the legislative objectives underlying that statute.

The purpose of the six month limitation for a demand upon a county was long ago explained by Arizona courts. The statute protects counties "from having to meet the items of an open account years after the data relative to the items thereof may have passed from the knowledge" of the responsible county officials. *Apache County v. Barth*, 6 Ariz. 13, 30, 53 P. 187, 192 (1898), *rev'd on other grounds*, 177 U.S. 538, 20 S.Ct. 718, 44 L.Ed. 878 (1900). The term "last item of the account accrues" is especially relevant to "any claim for particular services rendered at irregular intervals." *Cochise County v. Wilcox*, 14 Ariz. 234, 238, 127 P. 758, 759–60 (1912). To efficiently administer its responsibilities, it may be crucial that a county have notice of its legitimate debts within a short time after those debts become due. If so, in the case at bench there is no question about the county's cognizance of plaintiff's repeated efforts to protest his unjust dismissal. Another purpose of the statute has been described as to prevent county reve-

nue from being "consumed" in litigation over claims when the county might have been able to "amicably adjust" the claim before "faced with the costs of suit." *Norcor of America v. Southern Arizona International Livestock Association*, 122 Ariz. 542, 543, 596 P.2d 377, 378 (App. 1979). Again, the filing of grievance proceedings gave the county whatever opportunity it needed for "amicable adjustment." It made no attempt at adjustment. The county's opposition to the grievance claim made it impossible for it to "adjust" the back pay claim.

When an employee is wrongfully discharged before the expiration of his term, one long established remedy is to "treat the contract as continuing, and recover damages for breach thereof." *Old Dominion Copper Mining and Smelting Co. v. Andrews*, 6 Ariz. 205, 210, 56 P. 969, 970 (1899). The measure of damages for such a breach of contract is determined by deducting the sums earned in mitigation "from the sum stipulated to be paid by the contract." *Id.* at 211, 56 P. at 971; *see also Perry v. Apache Junction Elementary School Dist. # 43*, 20 Ariz.App. 561, 563, 514 P.2d 514, 516 (1973) (breach of an employment contract by wrongful discharge limits the contract damages to "the balance of the salary due under the employment contract less any sums the employee was able to earn during the remainder of the contract period"). Implicit in this is that the total damages cannot be calculated until the contract is terminated.

Countering the interest of counties in avoiding stale claims and in settlement is the policy of supporting the merit based civil service system; for county employees, see A.R.S. § 11–351 *et seq.*; for state employees, see A.R.S. § 41–761; *Donaldson v. Sisk*, 57 Ariz. 318, 113 P.2d 860 (1941); *see also City of Phoenix v. Powers*, 57 Ariz. 262, 113 P.2d 353 (1941). It is essential for the proper functioning of a true merit system that pretext discharges should not be used to circumvent its rules. The principle was perhaps best expressed by Justice Alfred Lockwood:

[I]f it be held that while an employee protected by civil service rules may secure his restoration to office by a long and tedious law suit, he must lose the salary for the period during which he was unjustly excluded, the tenure assured him by the system is like the well-known apples of Sodom—fair to the sight but crumbling to sterile ashes at the touch. In order to insure real protection to a civil service employee, it is necessary that when it appears that he has been illegally deprived of his position, he should be reimbursed for the loss of salary which accompanies the position.

*City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 247, 88 P.2d 83, 86 (1939).

There are numerous exceptions to the claims statute. Some of them are statutory. *See* A.R.S. § 11–621 (specifically exempting claims for salaries due county officials). Numerous other exemptions are recognized by decision. *See Norcor of America v. Southern Arizona International Livestock Association*, 122 Ariz. at 543–44, 596 P.2d at 378–79. The original underlying intent of the statute was to "relieve" the Board of Supervisors from having to meet the items of an open account years after the data may have passed from the knowledge of the county officers so that the validity of the individual items could no longer be determined. *Apache County v. Barth*, 46 Ariz. at 30, 53 P. at 192; *Cochise County v. Wilcox, supra.* That purpose is not served by applying the statute to claims for salary made by employees who had been hired by the county and whose salary had been fixed by the action of the county itself. *See Peterson v. Rodgers*, 51 Ariz. 502, 508, 78 P.2d 480, 482 (1938) (discussing the rationale for the statutory exemption of officers' salary claims). Although merit system employees do not have salaries fixed by ordinance, the civil service salary is easily ascertainable from the county's own records. Such claims are not the type for which the claims statute was designed. We find no Arizona case where a wrongfully discharged employee has been denied the well recognized measure of damages—lost salary—because he has failed to file a claim prior to adjudication of his underlying breach of contract action. *Cf. Maricopa County v. Sharrit*, 49 Ariz. 396, 67 P.2d 232 (1937).

Although we do not view the claim of a wrongfully discharged merit system employee as an "open account" we need not reach the issue of whether the statute is ever applicable to claims for salary owing to a wrongfully discharged civil service employee. Assuming, *arguendo*, that it is, we hold that both the presently acknowledged and historical purposes of the statute, together with the public policy underlying the merit system are satisfied by holding that the claim of an employee who follows the county grievance system for review accrues at the time the grievance procedure has been finally terminated, so that a claim is timely under A.R.S. § 11–622 if filed within six months from that date. Separate claims need not be filed every six months during the pendency of the grievance procedure.

## TORT THEORY

Plaintiff's complaint also sought recovery of damages for the tort of wrongful discharge. The measure of damages applied for the tort action may be the same as that followed in the contract action. *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (recognizing the tort of wrongful discharge and applying the contract measure of damages as a way of compensating the plaintiff for the tort).

The court of appeals properly recognized that the claims statute has no application to tort claims. 141 Ariz. at 170, 685 P.2d at 1322. This point is conceded by the county. Nevertheless, the court of appeals held that recovery of back pay was precluded by the failure to file under A.R.S. § 11–622. The court stated that the tort of wrongful discharge was recently fashioned to protect only at-will employees. 141 Ariz. at 170, 685 P.2d at 1322. Leaving aside the historical comment regarding the recent origin of this doctrine, we do not agree that the tort action is available only to at-will employees.

Where there is a breach of a legal duty imposed independently of the terms of the contract the prerequisite for tort liability is established. *Phoenix Professional Hockey Club v. Hirmer,* 108 Ariz. 482, 483, 502 P.2d 164, 165 (1972); *Aspell v. American Contract Bridge League of Memphis, Tennessee,* 122 Ariz. 399, 402, 595 P.2d 191, 194 (App.1979). Tort theory is available to protect a person against "wrongful interference with his employment." *Id.* We can see no theoretical difference between breach of a legally implied covenant of good faith by a discharge which violates fundamental public policy (*see* cases cited in *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 545 n. 1, 688 P.2d 170, 171 n. 1 (1984); *see also Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (App.1980); *Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (App.1977)) and the breach of a statutorily implied covenant of "cause" for discharge. A.R.S. § 11–356(A); Pima County Merit System Rules, Rule 12.2(f)(4). If the first should be considered a tort, then so should the second, for in either case defendant has intentionally breached contractual duties by disregarding rights conferred on plaintiff by operation of law rather than solely by the contract itself. *See Noble v. National American Life Ins. Co.,* 128 Ariz. 188, 624 P.2d 866 (1981).

A tort cause of action for the wrongful discharge of a public employee protected by the merit system was implicitly recognized by this court in *City of Phoenix v. Sittenfeld, supra.* After noting, under the then prevailing law, that a municipal corporation was not usually responsible for the torts of its agents, the *Sittenfeld* court added:

> But we think that since the very purpose of a civil service law is to prevent the corporation from depriving its employees of their positions except in conformity with the law, the better rule is that the *corporation must respond for a violation of such law* .... We hold, therefore, as a matter of public policy that where the law provides for a merit sys-

tem, and an employee who comes under that system is wrongfully removed from his position, he is entitled to recover from his employer, in the absence of some statute expressly forbidding it, the salary or wages which he would have received in the absence of such *illegal removal* ....

*Id.* 53 Ariz. at 247–48, 88 P.2d at 86 (emphasis supplied). We cannot tell from the trial court's judgment whether the award was made under the contract theory, the tort theory or both. Attorney's fees were awarded under the statute pertaining to recovery of fees for breach of contract (A.R.S. § 12–341.01(A)), so it is obvious that the trial court found a breach of contract. It may also have found that there was a tort and indeed the facts found by the court and the language used in the judgment support such an inference. We need not draw the distinction. We have held (*ante,* at 1305) that the claims statute was complied with in this case. We hold that under the facts found by the trial court, the award may be supported under the tort theory alleged in the complaint. As noted, the claims statute is inapplicable to such an award. Under either theory pursued by plaintiff, the court of appeals erred in holding that the claim for lost salary was barred by A.R.S. § 11–622.

## DEDUCTIONS FROM THE BACK PAY AWARD

■ Our disposition of the claim issue brings us to matters not addressed by the court of appeals. The county contends that the trial court erred in refusing to deduct G.I. benefits and unemployment compensation from the back pay award. The G.I. benefits were apparently granted to plaintiff by federal grant so that he might further his education at a community college while he was out of work. The county did not provide the fund from which the benefits were paid. The benefits were, therefore, a collateral source and should not be deducted from the back pay award. *See Michael v. Cole,* 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979); *Hall v. Olague,* 119

Ariz. 73, 579 P.2d 577 (App.1978); *see generally*, Dobbs, *Remedies*, § 8.10 (1973).

The contention that the unemployment benefits should have been deducted from the back pay award requires a different analysis. Most cases discussing this issue arise under federal statutes such as the NLRA and Title VII. There is a split of authority concerning the deduction of unemployment compensation under Title VII. *See generally*, Note, *The Deduction of Unemployment Compensation from Back-Pay Awards under Title VII*, 16 Mich.J. of L.Ref. 643 (1983). One line of cases derives from *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951) and is best represented by *Kauffman v. Sidereal Corp.*, 695 F.2d 343 (9th Cir.1983). These cases consider unemployment compensation to be a collateral source. *See Monroe v. Oakland Unified School Dist.*, 114 Cal.App.3d 804, 810–812, 170 Cal.Rptr. 867, 870–71 (1981); *Billetter v. Posell*, 94 Cal.App.2d 858, 860, 211 P.2d 621, 623 (1949) ("Benefits of this character are intended to alleviate the distress of unemployment and not to diminish the amount which an employer must pay as damages for the wrongful discharge of an employee"); *see also Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 81–85 (3d Cir.1983); *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549 (11th Cir.1983) (en banc reconsideration); *Schwarze v. Solo Cup Co.*, 112 Ill.App.3d 632, 640, 68 Ill.Dec. 228, 233–34, 445 N.E.2d 872, 877–78 (1983) (unemployment benefits are intended to relieve economic distress and may not be considered as salary).

A second line of cases is represented by *EEOC v. Enterprise Association Steamfitters Local No. 638*, 542 F.2d 579 (2d Cir.1976) *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977) which held that while collateral sources are not deductible from a tort award under common law, policy considerations allow for deduction of unemployment compensation from back pay awards in Title VII cases. *Id.* at 591–92. *See also Merriweather v. Hercules, Inc.*, 631 F.2d 1161 (5th Cir.1980)

(deduction is within the discretion of the trial court).

We believe that the line of cases which holds that unemployment compensation is a collateral source is the better rule. The policies underlying the unemployment compensation system include "encouraging employers to provide more stable employment" and providing for "persons unemployed through no fault of their own." A.R.S. § 23–601. The *Gullet Gin* and *Kauffman* line of cases supply a rationale which best supports these state policies. This does not give plaintiff a "windfall."

Under former A.R.S. § 23–788 (repealed 1981; now see A.R.S. § 23–787) the department of economic security could recover from plaintiff's back pay award the sums it paid out as unemployment compensation. *Arizona Department of Economic Security v. Lidback*, 26 Ariz.App. 143, 546 P.2d 1152 (1976).

We affirm the trial court's determination that the G.I. benefits and unemployment compensation received by plaintiff should not be deducted from his award of back pay.

## PREJUDGMENT INTEREST

■ The trial court awarded "prejudgment interest in the amount of TEN PER-CENT·(10%) on what would have been the net amount of each paycheck as it became due." Prejudgment interest on a liquidated claim is a matter of right. *L.M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz.App. 260, 265, 488 P.2d 196, 201 (1971). This is true whether the liquidated claim sounds in tort or contract. *Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 64–65, 546 P.2d 798, 800–01 (1976) (in division); *Arizona Title Ins. and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971). A good faith dispute over liability will not defeat a recovery of prejudgment interest on a liquidated claim. *Banner Realty, supra; Arizona Title Ins., supra.* The amount of each of plaintiff's paychecks withheld from him as a result of his wrongful discharge could be computed with exactness from the

evidence in the record without reliance upon opinion or discretion. This satisfies the judicial definition of a "liquidated claim" and sustains an award of prejudgment interest. *Banner Realty, supra; Arizona Title Ins., supra; Homes & Son Construction Co., Inc. v. Bolo Corporation,* 22 Ariz.App. 303, 306, 526 P.2d 1258, 1261 (1974); *see also Arizona Eastern Railroad Co. v. Head,* 26 Ariz. 259, 269, 224 P. 1057, 1061 (1924) ("Interest is computed upon sums definitely known, or that may be ascertained by arithmetical computation").[5]

■ Pima County contends that plaintiff is not entitled to prejudgment interest because he did not request such relief in his complaint. The complaint and the amended complaint include a prayer for interest. Pima County further contends that prejudgment interest may not be awarded because no statute specifically authorizes such relief against a county. McQuillin states that

> In the absence of a relevant legal provision, the general rule is that a municipal corporation may not be charged interest on claims against it without express agreement therefor, except in situations where money is wrongfully obtained or illegally withheld.

17 McQuillin, *Municipal Corporations,* § 48.09 at 88 (3d rev. ed. 1982) (footnotes omitted); *see also Miners & Merchants Bank v. Herron,* 46 Ariz. 71, 82–83, 47 P.2d 430, 435 (1935) (court declined to issue a writ to make a "levy to pay interest upon interest" in part because what was sought was "not, in the true sense, interest"; in part, because no statute authorized such interest against a sovereign).

A.R.S. § 12–825 reads:

> If judgment is rendered for plaintiff, it shall be for the amount actually due from the state to plaintiff, with legal

interest thereon from the time the obligation accrued and without costs.

Plaintiff cites several cases from Nevada where wrongfully discharged plaintiffs are routinely given interest on back pay awards under statutes similar to ours. *Schall v. State ex rel. Dept. of Human Resources,* 94 Nev. 660, 587 P.2d 1311 (1978) (state employee); *Hardison v. Carmany,* 88 Nev. 670, 677, 504 P.2d 1, 6 (1972) (county employee). Arizona has previously awarded interest against a county. *Greenlee County v. Webster,* 30 Ariz. 245, 246 P. 543 (1926), *overruled on other grounds; Schwartz v. Schwerin,* 85 Ariz. 242, 250, 336 P.2d 144, 149 (1959). In addition, a "county is a political subdivision of the state existing and created to aid in the administration of the state's laws and for purposes of self-government." *Board of Supervisors of Maricopa County v. Stanford,* 70 Ariz. 277, 282, 219 P.2d 769, 772 (1950); *Hunt v. Mohave County,* 18 Ariz. 480, 483, 162 P. 600, 602 (1917). Thus, a county's liability for prejudgment interest is incorporated into A.R.S. § 12–825. The trial court did not err in awarding plaintiff prejudgment interest on each paycheck as it came due.

The opinion of the court of appeals is vacated in part, modified in part and supplemented by this opinion. The judgment is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

■

---

5. The only portion of the claim which is difficult to ascertain is the amount to be *deducted—i.e.,* the sums plaintiff earned in mitigation of his damages. It is neither good contract law nor equitable to allow the party responsible for the damages to claim that the damages are not "liquidated" because the only difficulty in computation arises from the wrongfully discharged employee's attempts to mitigate. To the extent that *Fogelman v. Peruvian Assoc.,* 127 Ariz. 504, 622 P.2d 63 (App.1980), indicates a contrary rule, it is disapproved.